Calvin DUNNING, Plaintiff,

v.

GENERAL ELECTRIC COMPANY, a corporation, d/b/a General Electric Plastics, Defendant.

Civ. A. No. 95–T–551–N.

United States District Court,
M.D. Alabama,
Northern Division.

July 17, 1995.

pany discriminated against him because he is an African–American. Count I of the complaint alleges denials of promotion in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C.A. §§ 1981a, 2000e through 2000e–17 (West 1994). Count II alleges racial harassment in violation of Title VII. Count III alleges racial harassment in violation of 42 U.S.C.A. § 1981 (West 1994). Count IV alleges denials of promotion in violation of § 1981. Jurisdiction is proper under 28 U.S.C.A. §§ 1331, 1343 (West 1993) and 42 U.S.C.A. § 2000e–5(f)(3) (West 1994).

This cause is now before the court on two motions filed by General Electric. The first is a motion to dismiss counts III and IV. The second is a motion to dismiss the compensatory and punitive damages claims under counts I and II and to strike the jury demand. For the reasons that follow, the court will grant the motion to dismiss counts III and IV and deny the motion to dismiss counts I and II and to strike the jury demand.

I.

The court first turns to counts III and IV. Section 1981 prohibits racial discrimination in employment.[1] General Electric contends that the counts brought under this statute are time-barred. Dunning does not appear to contest General Electric's assertion that the relevant statute of limitations allows Dunning two years to file a § 1981 claim. *Goodman v. Lukens Steel Co.*, 482 U.S. 656, 661–62, 107 S.Ct. 2617, 2621, 96 L.Ed.2d 572 (1987) (state limitations period for personal injury, which applies to 42 U.S.C.A. § 1983 (West 1994), also applies to § 1981); *Lufkin v. McCallum*, 956 F.2d 1104, 1105–06 & n. 2 (11th Cir.) (Alabama's limitations period for

Gary Eugene Atchison, Kenneth T. Hemphill, Montgomery, AL, Donald R. Harrison, Harrison & Edmondson, LLC, Dadeville, AL, for plaintiff Calvin Dunning.

John Fairley McDonald, III, Copeland, Franco, Screws & Gill, P.A., Montgomery, AL, for defendant General Elec. Co., a corp. dba General Elec. Plastics.

**MEMORANDUM OPINION AND ORDER**

MYRON H. THOMPSON, Chief Judge.

In this lawsuit, plaintiff Calvin Dunning claims that defendant General Electric Com-

---

1. Section 1981, as recently amended, provides:
 "(a) Statement of equal rights
 All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.
 "(b) 'Make and enforce contracts' defined

 For purposes of this section, the term 'make and enforce contracts' includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.
 "(c) Protection against impairment
 The rights protected by this section are protected against impairment by non-governmental discrimination and impairment under color of State law."
 42 U.S.C.A. § 1981 (West 1994).

personal injury for purposes of § 1983 is two years), *cert. denied,* —— U.S. ——, 113 S.Ct. 326, 121 L.Ed.2d 246 (1992); 1975 Ala.Code § 6–2–38(*l*) (Michie 1993) ("All actions for any injury to the person or rights of another not arising from contract and not specifically enumerated in this section must be brought within two years"). Because this lawsuit was filed in April 1995 and the last of Dunning's allegations relates to July 1992, the two-year limitation period has run unless it has been tolled.

▮ Dunning argues that the running of the statute of limitations applicable to his § 1981 claim should be tolled by the filing of his charge with the Equal Employment Opportunity Commission (EEOC) pursuant to Title VII, which, like § 1981, prohibits racial discrimination in employment. The United States Supreme Court explicitly rejected this argument in *Johnson v. Railway Express Agency,* 421 U.S. 454, 465–66, 95 S.Ct. 1716, 1722–23, 44 L.Ed.2d 295 (1975), stating that "it is conceivable, and perhaps almost to be expected, that failure to toll will have the effect of pressing a civil rights complainant who values his § 1981 claim into court before the EEOC has completed its administrative proceeding ..., [b]ut the fundamental answer to [this] argument lies in the fact—presumably a happy one for the civil rights

claimant—that Congress clearly has retained § 1981 as a remedy against private employment discrimination separate from and independent of the more elaborate and time-consuming procedures of Title VII." Dunning argues that when Congress passed the Civil Rights Act of 1991, Pub.L. No. 102–166, 105 Stat. 1071 (1991), it broadened civil rights under both § 1981 and Title VII. This is undeniably true. But the 1991 Act, which was passed, in part, to respond specifically to a number of Supreme Court cases, does not include *Johnson* in that group. *Landgraf v. USI Film Products,* —— U.S. ——, ——, 114 S.Ct. 1483, 1489–90, 128 L.Ed.2d 229 (1994).[2] Neither does the Act intertwine § 1981 and Title VII more than was already the case when *Johnson* was decided such that the decision in *Johnson* based on the independence of the two statutes would be undermined. The court therefore holds that the holding in *Johnson* still controls, that the running of the statute of limitations was not tolled, and that Dunning's § 1981 claims must therefore be dismissed.

## II.

The court next turns to Dunning's Title VII claims for compensatory and punitive damages. General Electric contends that the Civil Rights Act of 1991 does not permit such

---

2. In *Landgraf,* the Court explained:

"The Civil Rights Act of 1991 is in large part a response to a series of decisions of this Court interpreting the Civil Rights Acts of 1866 and 1964. Section 3(4) expressly identifies as one of the Act's purposes 'to respond to recent decisions of the Supreme Court by expanding the scope of relevant civil rights statutes in order to provide adequate protection to victims of discrimination.' That section, as well as a specific finding in § 2(2), identifies *Wards Cove Packing Co. v. Atonio,* 490 U.S. 642, 109 S.Ct. 2115, 104 L.Ed.2d 733 (1989), as a decision that gave rise to special concerns. Section 105 of the Act, entitled 'Burden of Proof in Disparate Impact Cases,' is a direct response to *Wards Cove.*

"Other sections of the Act were obviously drafted with 'recent decisions of the Supreme Court' in mind. Thus, § 101 ... amended the 1866 Civil Rights Act's prohibition of racial discrimination in the 'mak[ing] and enforce[ment] [of] contracts, 42 U.S.C. § 1981 (1988 ed., Supp. III), in response to *Patterson v. McLean Credit Union,* 491 U.S. 164, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989); § 107 responds to *Price Waterhouse v. Hopkins,* 490

U.S. 228, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989), by setting forth standards applicable in 'mixed motive' cases; § 108 responds to *Martin v. Wilks,* 490 U.S. 755, 109 S.Ct. 2180, 104 L.Ed.2d 835 (1989), by prohibiting certain challenges to employment practices implementing consent decrees; § 109 responds to *EEOC v. Arabian American Oil Co.,* 499 U.S. 244, 111 S.Ct. 1227, 113 L.Ed.2d 274 (1991), by redefining the term 'employee' as used in Title VII to include certain United States citizens working in foreign countries for United States employers; § 112 responds to *Lorance v. AT & T Technologies, Inc.,* 490 U.S. 900, 109 S.Ct. 2261, 104 L.Ed.2d 961 (1989), by expanding employees' rights to challenge discriminatory seniority systems; § 113 responds to *West Virginia Univ. Hospitals, Inc. v. Casey,* 499 U.S. 83, 111 S.Ct. 1138, 113 L.Ed.2d 68 (1991), by providing that an award of attorney's fees may include expert fees; and § 114 responds to *Library of Congress v. Shaw,* 478 U.S. 310, 106 S.Ct. 2957, 92 L.Ed.2d 250 (1986), by allowing interest on judgments against the United States."

—— U.S. at ——, 114 S.Ct. at 1489–90 (footnote omitted).

damage claims if a plaintiff is, like Dunning, already covered by § 1981. The court tests this contention by examining statutory language and, when this turns out to be insufficient, legislative history.

## A.

■ Title VII prohibits not only race but sex and religious discrimination. 42 U.S.C.A. § 2000e–2(a) (West 1994).[3] Prior to the Civil Rights Act of 1991, "Title VII afforded only 'equitable' relief," including backpay. *Landgraf,* —— U.S. at ——, 114 S.Ct. at 1490. The 1991 Act makes compensatory and punitive damages available under Title VII through 42 U.S.C.A. § 1981a (West 1994). *Id.* at ——, 114 S.Ct. at 1491. But it does so only if the plaintiff "cannot recover under section 1981." 42 U.S.C.A. § 1981a(a)(1) (West 1994). The question is how to interpret that restriction.

The 1991 Act amended Title VII, in relevant part, to read as follows:

"(a) Right of recovery

(1) Civil rights

In an action brought by a complaining party under section 706 or 717 of the Civil Rights Act of 1964 (42 U.S.C. 2000e–5) [42 U.S.C.A. §§ 2000e–5 or 2000e–16] against a respondent who engaged in unlawful intentional discrimination (not an employment practice that is unlawful because of its disparate impact) prohibited under section 703, 704, or 717 of the Act (42 U.S.C. 2000e–2 or 2000e–3) [42 U.S.C.A. §§ 2000e–2, 2000e–3, or 2000e–16], and *provided that the complaining party cannot recover under section 1981 of this title,* the complaining party may recover compensatory and punitive damages as allowed in subsection (b) of this section, in addition to any relief authorized by section 706(g)

of the Civil Rights Act of 1964 [42 U.S.C.A. § 2000e–5(g) ], from the respondent.

. . . .

"(c) Jury trial

If a complaining party seeks compensatory or punitive damages under this section—

(1) any party may demand a trial by jury."

42 U.S.C.A. § 1981a(a)(1) & (c)(1) (West 1994) (emphasis added).

■ The court sees three ways of interpreting the "cannot recover" restriction in § 1981a(a)(1). First, the section could be interpreted simply to exclude compensatory and punitive damages for those plaintiffs who are already covered by § 1981, irrespective of whether relief is actually available to them under § 1981. Under this "coverage" interpretation, § 1981a(a)(1)'s compensatory and punitive damages provision excludes, without exception, all claims of race and ethnic discrimination because § 1981 allows such damages for these claims.[4]

Second, § 1981a(a)(1) could be interpreted, in contrast, to include compensatory and punitive damages for all plaintiffs, including those asserting claims of race and ethnic discrimination, unless compensatory and punitive damages are actually available to a plaintiff under § 1981. Under this "available relief" interpretation, claims of race and ethnic discrimination could fall within § 1981a(a)(1)'s "coverage" but damages relief could still be "unavailable." Whether compensatory and punitive damages are unavailable under § 1981a(a)(1) would be case specific. If, in fact, such relief is available for the same discrimination under § 1981 it is then unavailable under § 1981a(a)(1). In many cases, of course, the first and second interpretations will have the same result because compensatory and punitive damages

---

**3.** Section 2000e–2(a) provides in part:
"It shall be an unlawful employment practice for an employer—
(1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or
(2) to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or oth-

erwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin."

**4.** Because the scope of the § 1981a(a)(1) is limited to compensatory and punitive damages, the coverage interpretation only applies to these damages. Backpay and other relief available to victims of racial or ethnic discrimination would remain covered by Title VII under the coverage interpretation even though there is also a § 1981 claim.

for claims based on race and ethnicity are often available under § 1981. A plaintiff claiming racial discrimination will typically be entitled to relief under § 1981 and, therefore, § 1981a(a)(1) will be inapplicable or unavailable under either interpretation. Sometimes, however, a plaintiff will be covered by § 1981 but, for some reason such as a time bar, relief will be unavailable.

Third, § 1981a(a)(1) could be interpreted to provide that a plaintiff who is covered by § 1981 because of race or ethnicity, but who is also covered by Title VII because of sex or religion, is not entitled to compensatory and punitive damages for the discrimination reached by Title VII. Under this "intertwined claims" interpretation, a black woman who charged both race and sex discrimination would be unable to recover compensatory and punitive damages for the sex discrimination under § 1981a(a)(1) because she can recover for the race discrimination under § 1981. This interpretation, which relates the words "cannot recover" to the plaintiff rather than to her separate claims, seems unlikely on its face, but is possible given the wording of the statute.

This range of possibilities suggests that § 1981a(a)(1) is not well drafted. It is true that the intertwined claims reading seems farfetched. The 1991 Act does not, however, give the court much guidance in choosing between the coverage and the available relief interpretations. Because the language is unclear, the court turns to legislative history and a detailed examination of each of the three interpretations.

### B.

The court is aware that the legislative history of the 1991 Act must be approached with caution. *See Landgraf,* —— U.S. at ——, 114 S.Ct. at 1495 n. 15; *id.* at ——, 114 S.Ct. at 1509 & n. 2 (Blackmun, J., dissenting); *Rivers v. Roadway Express,* —— U.S. ——, —— & n. 8, 114 S.Ct. 1510, 1517 & n. 8, 128 L.Ed.2d 274 (1994); *Landgraf* and *Rivers,* —— U.S. ——, —— & n. 1, 114 S.Ct. 1522, 1522 & n. 1, 128 L.Ed.2d 229, (1994) (Scalia, J., concurring). Given the Act's lack of clarity, however, the court has no choice but to search for congressional intent. If any portion of the legislative history can be considered authoritative, it is the Sponsors' Interpretative Memorandum, which "is intended to reflect the intent of all of the original cosponsors." 137 Cong.Rec. S15,483 (1991).

#### 1.

The intertwined claims interpretation, under which the "cannot recover" language applies only to plaintiffs who could have a claim for one type of discrimination under Title VII and another type under § 1981, can be rejected fairly easily. The structure of § 1981a is informative. Subsection (a)(1) of § 1981a, set forth above, concerns civil rights claims generally. Subsection (a)(2) of § 1981a deals specifically with disability rights.[5] The two subsections are essentially parallel in all respects except that the disabilities subsection lacks the "cannot recover" phrase. If the intertwined claims interpretation of the "cannot recover" language were correct, the lack of such a restriction in the disabilities subsection would make no sense. There is no logical reason to prevent a black woman from recovering for sex discrimination because she has a race discrimination claim under § 1981 but to allow a disabled black to recover for both disability and race discrimination.

---

5. Section 1981a(a)(2) provides:

"In an action brought by a complaining party under the powers, remedies, and procedures set forth in section 706 or 717 of the Civil Rights Act of 1964 [42 U.S.C.A. §§ 2000e–5 or 2000e–16] (as provided in section 107(a) of the Americans with Disabilities Act of 1990 (42 U.S.C. 12117(a)), and section 794a(a)(1) of Title 29, respectively) against a respondent who engaged in unlawful intentional discrimination (not an employment practice that is unlawful because of its disparate impact) under section 791 of Title 29 and the regulations implementing section 791 of Title 29, or who violated the requirements of section 791 of Title 29 or the regulations implementing section 791 of Title 29 concerning the provision of a reasonable accommodation, or section 102 of the Americans with Disabilities Act of 1990 (42 U.S.C. 12112), or committed a violation of section 102(b)(5) of the Act [42 U.S.C.A. § 12112(b)(5)], against an individual, the complaining party may recover compensatory and punitive damages as allowed in subsection (b) of this section, in addition to any relief authorized by section 706(g) of the Civil Rights Act of 1964 [42 U.S.C.A. § 2000e–5(g)], from the respondent."

The legislative history provides further reason to reject the intertwined claims interpretation. The Sponsors' Interpretative Memorandum states that there is no intention to "prevent a person from challenging discrimination which causes demonstrably different harms under each of the statutes" and continues by declaring that "a woman who suffers both race and sex harassment, and is injured in different ways by each, may challenge the race discrimination under section 1981 and the sex discrimination under section 1981A, and if proven, may recover under both." 137 Cong.Rec. S15,484 (1991); *see also* 137 Cong.Rec. H9,526–27 (1991) (statement of Representative Edwards).

Based on the statutory structure and legislative history, the court rejects the intertwined claims interpretation.

### 2.

The court next turns to the coverage interpretation, which posits that the "cannot recover" language reflects an intent by Congress not to enlarge Title VII to reach claims already covered by § 1981. The Sponsors' Interpretative Memorandum reflects that the purpose of amending Title VII by § 1981a(a)(1) was to allow victims of intentional sex or religious discrimination to recover compensatory and punitive damages already permitted victims of racial or ethnic discrimination under § 1981. 137 Cong.Rec. S15,483–84 (1991). The question is whether § 1981a(a)(1) enlarged Title VII with respect to only sex and religion or also with regard to race and ethnicity. Either possibility is consistent with the purpose of expanding relief for sex and religious discrimination, but only one was the intent of the legislation.

The 1991 Act does not state that § 1981a(a)(1) expands Title VII with respect to only sex and religious discrimination. The 1991 Act can be understood in this limited way only by reading an exclusion of race and ethnic discrimination into the language allowing compensatory and punitive damages if the plaintiff "cannot recover under section 1981." In other words, because victims of race and ethnicity discrimination are entitled to compensatory and punitive damages under § 1981, they are not included in § 1981a(a)(1); only victims of sex and religious discrimination, who are not entitled to such damages under § 1981, are included in § 1981a(a)(1) under this reading. It must be recognized that this would be an indirect way for Congress to restrict the reach of § 1981a(a)(1) of the 1991 Act, which otherwise would apply to all people covered by Title VII who were subject to intentional discrimination.

Further, the legislative history weighs against the coverage interpretation of the "cannot recover" language.[6] The Sponsors' Interpretative Memorandum states that the 1991 Act "authorizes the award of compensatory and punitive damages in cases of intentional employment discrimination against persons within the protected categories of Title VII and the Americans with Disabilities Act[, 42 U.S.C.A. §§ 12101–213 (West Supp. 1995) ]." 137 Cong.Rec. S15,484 (1991).[7]

---

**6.** Although most of the relevant language of the Sponsors' Interpretative Memorandum is quoted in the body of this memorandum opinion, the court sets out the three key paragraphs in full because order and context are important:

"S. 1745 creates a new provision, to be codified in section 1981A in Title 42 of the U.S.Code. Section 1981A authorizes the award of compensatory and punitive damages in cases of intentional employment discrimination against persons within the protected categories of Title VII and the Americans with Disabilities Act.

"In order to assure that a complaining party does not obtain duplicative damage awards against a single respondent under both section 1981 and section 1981A, the provision limits section 1981A damage awards to a complaining party who 'cannot recover under section 1977 of the Revised Statutes (42 U.S.C. 1981).'

The complaining party need not prove that he or she does not have a cause of action under section 1981 in order to recover damages in the section 1981A action.

"Moreover, this provision does not prevent a person from challenging discrimination which causes demonstrably different harms under each of the statutes. For example, a woman who suffers both race and sex harassment, and is injured in different ways by each, may challenge the race discrimination under section 1981 and the sex discrimination under section 1981A, and if proven, may recover under both. The court should, of course, ensure that she does not receive duplicate awards for the same harm."

137 Cong.Rec. S15,484 (1991).

**7.** The Americans with Disabilities Act is mentioned only in § 1981a(a)(2).

Race and ethnicity are not excluded. The Memorandum also states that a plaintiff "need not prove that he or she does not have a cause of action under section 1981 in order to recover damages in the section 1981A action." *Id.* Plaintiffs charging sex or religious discrimination have no cause of action under § 1981. Because only plaintiffs charging race or ethnic discrimination could possibly have a § 1981 claim, the statement clarifying that plaintiffs need not prove the lack of a cause of action under § 1981 would only be necessary if Congress intended to include race and ethnicity in its expansion of Title VII.[8] Furthermore, a floor statement by Representative Edwards, which although perhaps less authoritative is more direct, states that plaintiffs "suffering from racial or national origin discrimination have recourse under both Sections 1977 [1981] and 1977A [1981a]." 137 Cong.Rec. H9,526 (1991). The legislative history, therefore, strongly suggests that Congress intended that all people covered by Title VII were given the opportunity to recover compensatory and punitive damages for intentional discrimination under Title VII.

Finally, in describing § 1981a, the Supreme Court implicitly recognized the intent to include race and ethnicity claims in the expansion of Title VII by discussing "a Title VII plaintiff" without differentiating between the various types of Title VII claims. *Landgraf,* —— U.S. at ——, 114 S.Ct. at 1491.

### 3.

The analysis thus far has eliminated the intertwined claims interpretation and cast doubt on the coverage interpretation. The court now turns to what the legislative history affirmatively states.

The Sponsors' Interpretative Memorandum declares that the "cannot recover" language is meant "to assure that a complaining party does not obtain duplicative damage awards against a single respondent under both section 1981 and section 1981A." 137 Cong.Rec. S15,484 (1991). For instance, a black woman cannot "receive duplicate awards for the same harm." *Id.* These statements show that the legislative intent was specifically to prevent duplicative damage awards. *See also* 137 Cong.Rec. S15,234 (1991) (statement of Senator Kennedy). There is no legislative history that conflicts with this statement of intent.[9]

The 1991 Act can follow this narrow intent by preventing recovery under Title VII if there is relief available under § 1981. Although the coverage interpretation would also follow this intent, it does not mesh as well with the legislative history as discussed above. Further, the coverage interpretation would not allow plaintiffs with race and ethnic discrimination claims for compensatory and punitive damages to take advantage of Title VII's administrative procedures—which vest the EEOC with the "authority to investigate individual charges of discrimination" and "to promote voluntary compliance with the requirements of Title VII," *Alexander v. Gardner–Denver Co.,* 415 U.S. 36, 44, 94 S.Ct. 1011, 1017–18, 39 L.Ed.2d 147 (1974)—a result that does not mesh well with Title VII. It would be unfortunate if an effort to equalize the damages available to people covered by Title VII ended up barring people charging racial and ethnic discrimination from taking full advantage of Title VII's administrative process. The available relief interpretation, read in light of its purpose of preventing duplicative damage awards, avoids this situation. On balance, the court is convinced that the available relief interpretation is the correct reading of the 1991 Act.

### 4.

It is unclear exactly when relief is unavailable such that a plaintiff "cannot recover"

---

**8.** The cause-of-action statement cannot be read merely as rejecting the application of the "cannot recover" language to plaintiffs with non-race Title VII claims and race-based § 1981 claims. After discussing the cause of action question, the Memorandum starts a new paragraph beginning with "Moreover" to address the race and non-race claims question. The cause-of-action statement and the discussion of intertwined claims are meant to prevent different misreadings of the 1991 Act.

**9.** The lack of contradiction takes on added significance because of the importance legislators attached to legislative history in other areas of the 1991 Act. *See* Civil Rights Act of 1991, Pub.L. No. 102–166, § 105(b), 105 Stat. 1071, 1075 (1991); 137 Cong.Rec. S15,483, S15,485 (1991) (statements of Senators Danforth and Kennedy).

under § 1981. Certainly, a plaintiff "need not prove that he or she does not have a cause of action under section 1981 in order to recover damages in the section 1981A action." 137 Cong.Rec. S15,484 (1991). The court reads this to mean at least that a plaintiff can bring a Title VII claim even though he or she had a § 1981 cause of action at one time if that avenue has since been foreclosed. This reading meets the common understanding of the words "cannot recover" and complies with the legislative intent of not allowing duplicative damages.

Some would go further and allow compensatory and punitive damages under Title VII "where a title VII plaintiff files with the court a binding stipulation waiving any section 1981 claim against the title VII defendant for the act of alleged discrimination at issue." 137 Cong.Rec. S15,234 (1991) (statement of Senator Kennedy). Perhaps Title VII and § 1981 damages actions can be brought concurrently as long as double damages are not awarded. 137 Cong.Rec. H9,526 (1991) (statement of Representative Edwards). Under this reading, relief under § 1981 is available only when awarded. Plausible arguments can be made for each of these alternative readings of the available relief interpretation.

 The court need not determine the outer parameters of the "cannot recover" requirement. At a minimum, the "cannot recover" language must allow Title VII claims for compensatory and punitive damages when, at the time the Title VII claim is brought, relief under § 1981 is unavailable. Based on its earlier ruling that the statute of limitations has run on Dunning's § 1981 claim, the court will allow Dunning to pursue his Title VII damages claim. Because Dunning is entitled to pursue compensatory and punitive damages, a jury trial is available under § 1981a(c).

### III.

For the reasons discussed above, it is ORDERED that:

(1) The motion to dismiss counts III and IV filed by defendant General Electric Company on May 10, 1995 is granted and these counts are dismissed; and

(2) The motion to dismiss the compensatory and punitive damages claims under counts I and II and to strike the jury demand filed by defendant General Electric Company on May 10, 1995 is denied.