**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JUL 2 1998**

**PATRICK FISHER**
**Clerk**

PUBLISH

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

---

ROY E. ROBERTS,

      Plaintiff - Appellee,

v.

ROADWAY EXPRESS, INC., a
Delaware corporation,

      Defendant - Appellant.

Nos. 96-1554
& 97-1093

---

**Appeal from the United States District Court**
**for the District of Colorado**
**(D.C. No. 95-D-68)**

---

James J. Gonzales (David D. Powell with him on the briefs), Holland & Hart LLP,
Denver, Colorado for the Defendant - Appellant.

Rodney Parry Bridgers, Jr., Bridgers & Kazmierski, LLC (Stefan Kazmierski,
Bridgers & Kazmierski and David Lichtenstein, Froede and Lichtenstein, P.C., of
Westminster, Colorado, with him on the brief), Englewood, Colorado for the
Plaintiff - Appellee.

---

Before **SEYMOUR**, **ANDERSON** and **LUCERO**, Circuit Judges.

---

**LUCERO**, Circuit Judge.

---

      Following a jury trial, Roadway Express, Inc. ("Roadway") was found to

have retaliated against an employee, Roy Roberts, in violation of 42 U.S.C. §

1981 and Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e to 2000e-17, after Roberts complained of racial harassment in the workplace. In addition, the district court granted plaintiff costs and reasonable attorneys' fees. Appellant makes numerous allegations of error by the district court. These include a refusal to grant judgment as a matter of law for insufficiency of the evidence; exclusion of relevant evidence; admission of prejudicial evidence; issuance of legally erroneous jury instructions; allowance of a jury trial in simultaneous actions for compensatory and punitive damages under both 42 U.S.C. § 1981 and Title VII; failure to bar punitive damages; and award of excessive attorneys' fees to the appellee. We exercise jurisdiction pursuant to 28 U.S.C. § 1291, and affirm.

**I**

Roadway has employed Roberts since 1970 as a truck driver and laborer. In August 1992, Roberts transferred from Kansas City to Denver. Roberts testified that, after this move, he suffered racial harassment at Roadway's facility—he received two racially offensive notes, and fellow employees sabotaged his truck and otherwise interfered with his work. Roberts complained to his Denver supervisors about these incidents. Dissatisfied by their meager response, he sent a written complaint on March 23, 1993, to Roadway's headquarters in Akron, Ohio. In response, Roadway conducted an inquiry into Roberts's allegations. Both sides dispute the extent and scope of that

investigation. Roberts contends that following his March complaint his Denver supervisors subjected him to numerous disciplinary actions, many without substantive justification. He was eventually terminated on December 9, 1994, but subsequently reinstated after intervention by his union.

Roberts filed suit one month after his reinstatement, arguing that he had been subject to a racially hostile work environment and that Roadway retaliated against him for his March 1993 complaint to that effect. Though the jury found that Roberts had not proven his hostile work environment claim, it did find that Roadway had impermissibly retaliated against Roberts. He was awarded $85,000 in compensatory damages for emotional distress, pain, suffering, and mental anguish, and $100,000 in punitive damages. He was also awarded $171,385.50 in attorneys' fees.

## II

### A

Roadway first contends that the evidence is legally insufficient to support a judgment of retaliation and that the district court therefore erred in denying the company's motions for summary judgment, directed verdict, and judgment as a matter of law. We cannot agree.

Denial of Roadway's summary judgment motion is not properly appealable. Summary judgment ends at trial. Denial of summary judgment "is strictly a

pretrial order that decides only one thing—that the case should go to trial." Glaros v. H. H. Robertson Co., 797 F.2d 1564, 1573 (Fed. Cir. 1986) (citing Switzerland Cheese Ass'n v. E. Horne's Mkt., Inc., 385 U.S. 23, 25 (1966)). Therefore, "even if summary judgment was erroneously denied, the proper redress would not be through appeal of that denial but through subsequent motions for judgment as a matter of law . . . and appellate review of those motions if they were denied." Whalen v. Unit Rig, Inc., 974 F.2d 1248, 1251 (10th Cir. 1992).

As to Roadway's motions for directed verdict and judgment as a matter of law, we are unable to determine that the district court's rulings were improper. Error in denying such motions "will only be found if the evidence conclusively favors the moving party and is susceptible to no reasonable inferences that would sustain the non-moving party's position." Id. (citing Lucas v. Dover Corp., 857 F.2d 1397, 1400 (10th Cir. 1988)). "In reviewing the district court's action, this court cannot assess credibility of witnesses or substitute its judgment for that of the jury." Id.

To prove a prima facie case of retaliation, Roberts must establish that: (1) he engaged in protected opposition to discrimination; (2) he was subject to adverse employment action; and (3) that there exists a causal connection between the protected activity and the adverse action. See Jeffries v. Kansas, No. 96-3381, 1998 WL 318533, at *10 (10th Cir. June 17, 1998) (quoting Sauers v. Salt

Lake County, 1 F.3d 1122, 1128 (10th Cir. 1993)).[1]  Assuming he makes this prima facie showing, he may establish retaliation indirectly by demonstrating to a preponderance that Roadway's asserted reasons for the adverse action at issue are unworthy of belief.  Cf. Murray v. City of Sapulpa, 45 F.3d 1417, 1421 (10th Cir. 1995) (Title VII retaliation plaintiff may resist summary judgment by "show[ing] the defendant's explanation for its action was merely a pretext").  Effective cross-examination, combined with the plaintiff's initial evidence, may be sufficient to effect this task.  See Berry v. Stevinson Chevrolet, 74 F.3d 980, 987 (10th Cir. 1986) (quoting Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 255 n.10 (1981)).  Following a full trial on the merits, the issue is whether Roberts presented sufficient evidence for the jury to determine that adverse employment action was taken against him in response to the protected activity.  See Furr v. Seagate Tech., Inc., 82 F.3d 980, 985 (10th Cir. 1996) (quoting Fallis v. Kerr-McGee Corp., 944 F.2d 743, 744 (10th Cir. 1991)), cert. denied, 117 S. Ct. 684 (1997).

Roadway's asserted grounds of insufficiency are appellee's alleged failure to establish that (1) he suffered adverse employment action; (2) adverse action, if established, was causally connected to his written complaint of March 1993; and

---

[1]  These elements are identical for § 1981 and Title VII actions.  See Thomas v. Denny's, Inc., 111 F.3d 1506, 1513 (10th Cir.), cert. denied, 118 S. Ct. 626 (1997).

(3) he suffered compensable emotional distress.  However, we cannot infer from the evidence presented to us that the jury's findings as to these elements were unreasonable.

Evidence submitted by Roadway shows that within a two year period subsequent to his written complaint of discrimination, Roberts received twenty warning letters, two suspensions, and one termination.  Actions such as suspensions or terminations are by their nature adverse, even if subsequently withdrawn.  As to the written warnings, Roadway contends that they had no adverse effect on the terms and conditions of Roberts's employment because, after a nine month term of "validity," they could not be used to support disciplinary actions such as termination.  But the record indicates that the more warnings an employee received, the more likely he or she was to be terminated for a further infraction.  See, e.g., Appellant's App. at 889-91.  This alone is enough to constitute adverse action.  See Kim v. Nash Finch Co., 123 F.3d 1046, 1060 (8th Cir. 1997) ("There was also evidence that [employer] had 'papered' [plaintiff's] file with negative reports including two written reprimands.  These are the kind of serious employment consequences that adversely affected or undermined [plaintiff's] position, even if he was not discharged, demoted or suspended."); Marx v. Schnuck Mkts., Inc., 76 F.3d 324, 329 (10th Cir. 1996) (noting that pattern of retaliation began with plaintiff being "written up"); cf.

Berry, 74 F.3d at 986 (holding that employer actions that "can have an adverse impact on future employment opportunities" are legitimately regarded as "adverse employment action[s]," and that in light of Title VII's remedial purposes, adverse employment action should not be defined narrowly).

As to causation, appellant argues, first, that Roberts did not establish the necessary prima facie inference of causal connection, and, second, that he failed to refute Roadway's claim that the discipline he received flowed solely from race-neutral application of workplace rules and regulations. The first claim is not properly before us. Reviewing Roadway's motion for directed verdict and, to the extent we can,[2] the basis of its motion for summary judgment incorporated therein, see Appellant's App. at 413-15, we find no allegation by Roadway that Roberts failed to meet his prima facie obligation of raising an inference of causal connection between the March 1993 letter and the alleged adverse action. Only questions raised in a prior motion for directed verdict may be pursued in a post-trial motion for judgment as a matter of law. See Dow Chem. Corp. v. Weevil-Cide Co., 897 F.2d 481, 486 (10th Cir. 1990). Because the matter was not

---

[2] Roadway's incorporated motion for summary judgment is not included in the record on appeal. We have therefore relied on the district court's order denying that motion as a rough approximation of its contents. See Appellant's App. at 1-5. That ruling does not indicate that Roadway disputed whether Roberts had established a prima facie case of retaliation. Instead it suggests that Roadway focused on stating legitimate nondiscriminatory reasons for the alleged adverse employment actions. See id. at 4.

demonstrably raised below, we do not consider it on appeal. See Farmer's Ins. Co. v. Hubbard, 869 F.2d 565, 570 (10th Cir. 1989).

Nor can we accept Roadway's contention that the record is devoid of evidence sufficient to establish that its stated reasons for disciplining Roberts were pretextual. Roadway has provided us only excerpts of the testimony heard by the jury. See Appellant's App. at 136-980 (containing selected portions of transcript). While the appellee's supplemental appendix compensates for this deficiency in part, see Appellee's Supp. App. at 26-364 (containing additional transcript pages not in appellant's appendix), we appear to be without a very sizeable portion of the evidence presented to the jury. As a consequence, we are unable to review appellant's insufficiency claims and must therefore affirm on this point.[3] See United States v. Vasquez, 985 F.2d 491, 494-95 (10th Cir. 1993); see also McEwan v. City of Norman, 926 F.2d 1539, 1551 (10th Cir. 1991)

---

[3] We note Roadway's statement in its reply brief that it "requested on January, 6, 1997 that the court reporter prepare all trial proceedings, excluding voir dire and plaintiff's opening statement." Appellant's Reply Br. at 11 n.1. But, "[i]t is the appellant's responsibility to order and provide all portions of the transcript necessary to give the court of appeals a complete and accurate record of the proceedings insofar as such proceedings relate to the issues raised on appeal, and when sufficiency of the evidence is raised, the entire trial transcript ordinarily should be provided." 10th Cir. R. 10.1.1. "[I]t is counsel's responsibility to see that the record on appeal is sufficient for consideration and determination of the issues on appeal. The court is under no obligation to remedy any failure of counsel to fulfill that responsibility." 10th Cir. R. 10.3; see also Fed. R. App. P. 10(b). As we have indicated before, "[t]he lack of response from [a] court reporter does not excuse either [appellant] or his counsel from [the] responsibility to provide a transcript." Green v. Johnson, 977 F.2d 1383, 1387 (10th Cir. 1992).

("Generally, a party may not assign error on appeal unless he . . . designates that part of the district court proceeding relevant thereto for appellate review.").

Roadway's argument that Roberts failed to establish grounds for compensatory damages is also meritless. We discern two strands to this argument: first, that the evidence indicates Roberts suffered emotional distress only as a result of the alleged racial harassment, and not as a result of any retaliatory acts; second, that Colorado's Workers' Compensation Act "exclusively compensated" him for any emotional distress he was caused. See Appellant's Br. at 23-24.

The first claim must fail because it rests on an assertion about what factual conclusions are supported by the record. As the record is significantly incomplete, we cannot determine whether or not Roberts adequately established an evidentiary basis for compensatory damages.[4] As it is the appellant's burden to prove error in this regard, we have no choice but to assume that Roberts submitted sufficient evidence to validate the jury's conclusion. See Vasquez, 985

---

[4] We note, in particular, that we have not received the complete testimony of Dr John Yost, a psychiatrist to whom Roberts was referred by his primary care physician for job-related stress. Dr. Yost also appears to have authored several letters relating to Roberts's condition. See Appellee's Supp. App. at 47-48. These, too, are not in the record on appeal. In noting this omission, we do not mean to imply that medical or other expert testimony is required to prove emotional distress. See Kim, 123 F.3d at 1065.

F.2d at 494-95 (claims for evidentiary insufficiency not reviewable on appeal where record incomplete).

We are unsure how to construe the second claim. If Roadway means to argue that Colorado's Workers' Compensation Act provides the exclusive remedy for all work-related injuries including emotional distress caused by violations of the civil rights laws, that argument is readily disposed of by the Supremacy Clause. U.S. Const. art. VI, cl. 2; see Karcher v. Emerson Elec. Co., 94 F.3d 502, 509 (8th Cir. 1996) (state workers' compensation law cannot preempt federally created right to recover damages for emotional distress under Title VII); Lopez v. S.B. Thomas, Inc., 831 F.2d 1184, 1190 (2d Cir. 1987) (state workers' compensation statute cannot, consistent with Supremacy Clause, bar recovery for emotional distress under 42 U.S.C. § 1981). If Roadway means instead that Roberts may not recover under federal statutes for injuries already remedied under state law, that argument also fails because Roadway provides no evidence that Roberts was previously compensated for emotional distress under Colorado's law.

**B**

Roadway next argues that the trial court erred in refusing to admit certain disciplinary records from the period prior to Roberts's March 1993 complaint. Roadway's argument is not precisely made. The company appears to object to the exclusion of, among other materials, certain written warnings issued to Roberts in

1991 and 1992. See, e.g., Appellant's Br. at 26 (referencing material at Appellee's App. at B423-30). Yet, from what we can discern from Roadway's incomplete record on appeal, the district court appears only to have excluded Roberts's disciplinary records dating from before July 23, 1989. See Appellee's App. at 448-49.

We review that evidentiary ruling for abuse of discretion, finding error only if we determine it to have been based on a clearly erroneous finding of fact or an erroneous conclusion of law, or if it manifests a clear error in judgment. See Cartier v. Jackson, 59 F.3d 1046, 1048 (10th Cir. 1995). Our review is hampered greatly by Roadway's failure to provide us with a complete record. We cannot tell, for instance, what arguments Roberts made in opposition to the admission of this material, or whether the trial court made any comment on those arguments (or on Roadway's responses, if any) that might help us to understand more fully the premises of its decision to credit Roberts's position. See Appellant's App. at 423 (cutting off argument on admission of this evidence). In such circumstances, we are not inclined to dismantle the district court's decision.

We are nonetheless doubtful that under our appropriately deferential standard of review, we would perceive error. The district court agreed with both parties that a comparison of Roberts's disciplinary records from before and after his March 1993 written complaint was probative as to his retaliation claim. By

the time of trial some three years and eight months had elapsed since Roberts's complaint. The district court therefore concluded that Roadway should be allowed to present evidence from a similar period prior to the complaint, with material from beyond that date being deemed "attenuated" and thus more prejudicial than probative. See Appellee's App. at 422. No clear error in judgment is manifest in this decision.[5]

Roadway also appears to claim that it should have been entitled to introduce this evidence to impeach Roberts's credibility. We have reviewed the record and we see no indication that Roberts opened himself up to impeachment in this manner. Nor can we accept Roadway's claim that Roberts's closing argument improperly stated that he had not been disciplined prior to 1989. Roberts's counsel did refer to "all the discipline received by Mr. Roberts," Appellant's App. at 1033 (emphasis added by Appellant's Br. at 26), but only in reference to defendant's exhibit A16, which by its plain terms only covers the period August 1992 through December 1994, see Appellant's App. at B80. The

---

[5] The period immediately prior to the written complaint would certainly appear to be the most probative of whether the complaint triggered an increase in discipline. Years far removed from that period in time might present a record of disciplinary actions attributable to any number of variables, which might or might not still be present during a time period more focused around both sides of March 1993, such as Roberts's relative performance levels or his personal relationships with supervisors in different cities. The difficulty of discounting for such factors, when combined with the obviously probative nature of the discipline Roberts received proximate to his written complaint, provides ample support for the district court's decision.

jury, we are sure, was more than capable of discerning that counsel's "all" was thereby limited in scope. A second reference by Roberts's counsel to "all the disciplinary actions that were filed against Mr. Roberts" referenced an Exhibit 32, see Appellant's App. at 1034-35, which exhibit is apparently not included in the record on appeal. We will not hypothesize error.

### C

Roadway filed two motions for mistrial to the district court, and now appeals their denial. We review these denials for abuse of discretion. Polson v. Davis, 895 F.2d 705, 711 (10th Cir. 1990).

One of Roadway's motions for mistrial was in response to Roberts's counsel asking a defense witness whether he knew that Roadway's antidiscrimination training was "conducted . . . because Roadway got sued in Phoenix for retaliating against people who file EEO charges." Appellant's App. at 569. The trial court strongly admonished counsel for raising potentially prejudicial matters not appropriately before the court, see id. at 574-75, but denied Roadway's motion for a mistrial. That denial was closely premised on the district court's conclusion that the jury would be able to disregard the question, see id. at 577-78, a determination that the district court is in a better position to make than we are, see Polson, 895 F.2d at 711 (noting that because appellate review of egregiousness of misconduct "is constrained by our ability to review

only the written record . . . , we give great deference to the district judge who observed the trial"). Moreover, immediately following the question, see Appellee's Supp. App. at 260-61, the district court issued a cautionary instruction to the jury. Under the circumstances, we are satisfied that the question asked did not deny substantial justice to the defendant sufficient to justify a new trial. See Fed. R. Civ. P. 61; Polson, 895 F.2d at 711.

The other motion for mistrial was made in response to the introduction of testimony from two Roadway employees, Charles Hopson and Gary Gaddy. Gaddy testified that Steve Haag, one of Roberts's supervisors, had referred to Roberts as a "nigger driver" and had said, "I wish that jigaboo would move back to Kansas City." Appellant's App. at 921. Hopson testified that Haag had said of Roberts, "[I]f he don't like it here in Denver, why don't that nigger go back to Kansas City[?]" Id. at 954.

We understand Roadway to bring three objections related to the introduction of this testimony. First, "[a]s a matter of law, [the] testimony . . . was not rebuttal." Appellant's Br. at 30. Second, it unfairly prejudiced Roadway, given that the company relied on a contrary stipulation in the pretrial order—"There is no evidence that Roadway Express' managers made any racially discriminatory comments toward or about plaintiff," see Appellant's App. at 135—and on the district court's earlier refusal to allow the testimony to be

- 14 -

admitted as part of the plaintiff's case-in-chief.  Third, no surrebuttal was allowed.

We are unable to review the first objection.  So far as we can tell from the incomplete record before us, the district court only allowed the disputed material to be admitted as rebuttal to testimony by defense witness Skip Daniels.  See Appellee's App. at 561-64.  Daniels's testimony, however, is not included in its entirety in the record on appeal.[6]  We are thus prevented from reviewing in a considered fashion whether Gaddy and Hopson were properly designated as rebuttal witnesses.  See McEwan, 926 F.2d at 1550 (noting that "a party may not assign error on appeal unless he . . . designates that part of the district court proceeding relevant thereto for appellate review"); 10th Cir. R. 10.1.1, 10.3.  We must therefore assume that the district court was correct in so designating them.

The second objection argues that the stipulation in the pretrial order precluded the introduction of any testimony suggesting that Roadway managers, such as Haag, made any racially derogatory comments about Roberts.  Indeed, when counsel for Roberts first raised the possibility of introducing this testimony, the district court refused to allow modification of the pretrial order.  See Appellant's App. 406-08; see also Fed. R. Civ. P. 16(e) (final pretrial order

---

[6] Even supplementing the appellant's appendix with the submission of appellee, the record on appeal omits approximately one quarter of Roadway's direct examination of Daniels.  See Appellant's App. at 524-60; Appellee's Supp. App. at 240-51.

controls subsequent course of the action unless modified to prevent manifest injustice); Taylor v. Reo Motors, Inc., 275 F.2d 699, 704 (10th Cir. 1960) ("triable issues" agreed upon in pretrial order "ought not be altered or modified except to prevent manifest injustice"). However, the district court appears to have withdrawn this refusal at least as it related to rebuttal testimony. See Appellant's App. at 981 (allowing rebuttal testimony "is connected to my rulings last week about changing the pretrial order"); see also Grant v. Brandt, 796 F.2d 351, 355 n.1 (10th Cir. 1986) (treating motion for admission of testimony as motion for modification of pretrial order). We therefore review whether the district court abused its discretion in so modifying the pretrial order. See Long v. Laramie County Community College Dist., 840 F.2d 743, 750 (10th Cir. 1988) (where language of pretrial order precludes admitted testimony, district court's modification of pretrial order reviewed for abuse of discretion); Smith v. Ford Motor Co., 626 F.2d 784, 795 (10th Cir. 1980) (district court's decision to modify pretrial order reviewed for abuse of discretion); see also 3 James William Moore et al., Moore's Federal Practice ¶ 16.19 (3d ed.) (district court's "decision as to the extent that pretrial activity should prevent the introduction of otherwise competent and relevant testimony at trial must not be disturbed unless it is demonstrated that he has clearly abused the broad discretion vested in him by Rule 16").

A series of factors "should be considered in determining whether a district court has abused its discretion in . . . allowing testimony not specified in the pretrial order: '(1) the prejudice or surprise in fact of the party against whom the excluded witnesses would have testified, (2) the ability of that party to cure the prejudice, (3) the extent to which waiver of the rule against calling unlisted witnesses would disrupt the orderly and efficient trial of the case or of other cases in court, and (4) bad faith or willfulness in failing to comply with the court's order.'" Smith, 626 F.2d at 797 (quoting Meyers v. Pennypack Woods Home Ownership Ass'n, 559 F.2d 894, 904-05 (3d Cir. 1977)). The same rule logically applies to witnesses whose testimony is contrary to the terms of pretrial stipulations. See United States v. Sommers, 351 F.2d 354, 357 (10th Cir. 1965) (noting that pretrial stipulations may be modified at trial to prevent manifest injustice). Furthermore, analysis of the Smith factors may be evaluated in the light of the movant's capacity to demonstrate manifest injustice in the absence of modification. See Gorlikowski   See Fed. R. Civ. P. 16(e); 3 Moore's Federal Practice ¶ 16.78[4][b] at 16-206;

We start, therefore, from the premise that Roberts would have been manifestly prejudiced by the exclusion of the disputed testimony. The statements attributed to Haag went directly to the credibility of Roadway's claimed nondiscriminatory reasons for the disciplinary action taken against Roberts.

- 17 -

Moreover, the very reason that both witnesses testified they had not come forward earlier was fear of retaliation from Roadway. It would be ironic, not to say unjust, were Roadway able to defeat a claim of retaliation as a result of its employees' anxieties about the company's willingness and capacity to retaliate against them.

In that light, the Smith factors do not cut clearly enough in Roadway's favor to persuade us the district court abused its discretion. See Long, 840 F.2d at 750 (district court "best able to assess the circumstances" of whether modification of pretrial order is in "the interest of justice."). From the record before us, we are unable to determine fully the extent to which Roadway was prejudicially surprised by the testimony. The company insists that it developed its trial defense, including its opening statement, in reliance on the exclusion of the evidence. But we have neither the opening statement nor the entirety of that defense to review. More fundamentally still, we are doubtful that Roadway was unfairly prejudiced in light of the—presumptively correct—characterization of the Hopson and Gaddy testimony as rebuttal. Cf. United States v. Cook, 461 F.2d 906, 911-12 (5th Cir. 1972) (discounting prejudice where trial court judge admitted rebuttal evidence that violated pretrial stipulation); Wallace v. United States, 412 F.2d 1097, 1099, 1101 (D.C. Cir. 1969) (holding that although government stipulated it did not intend to use tape-recorded conversations at trial,

or if it did so would provide "reasonable notice," no error in subsequent admission when used to rebut matters raised earlier in trial); see also Burks v. Oklahoma Publ'g Co., 81 F.3d 975, 980 (10th Cir. 1996) (rebuttal witnesses may be called regardless of whether they are listed within terms of pretrial order); Grove Fresh Distributors, Inc. v. New England Apple Prods. Co., 969 F.2d 552, 559-60 (7th Cir. 1992) (holding that no unfair prejudice in allowing witness not listed in pretrial order because district court "carefully limited . . . testimony to rebuttal topics"). From what we can tell, Roadway would have had few alternatives to the strategy it pursued at trial. Even had it known at the outset that Haag's credibility would be undermined, the company could hardly have minimized his role in disciplining Roberts. Instead, its only effective course would have been to deny aggressively the veracity of Hopson and Gaddy—which is in any case exactly what the company did following the admission of their testimony.

Moreover, we see little indication that Roadway was unable to pursue this corrective strategy adequately. Following disclosure of the Hopson and Gaddy material outside the presence of the jury, the court appears to have directed that both witnesses be deposed prior to testifying. See Appellee's App. at 915; see also Summers v. Missouri Pac. R.R. Sys., 132 F.3d 599, 605 (10th Cir. 1997) (holding that prejudice curable where substance of testimony could have been

established through deposition); Moss v. Feldmeyer, 979 F.2d 1454, 1459 (10th Cir. 1992) (finding no abuse in admitting testimony outside terms of pretrial order in part because opposing party received summary of disputed material prior to trial testimony, and witnesses were available for discovery prior to testifying). Additionally, the court stated that Haag could be recalled as part of the defense's case-in-chief for the purposes of denying having made the statements. See id. at 563-64. Roadway's subsequent cross-examination of Hopson and Gaddy shows that appellant was by no means unprepared to question their truthfulness, and appellant does not refer us to any objection on its part requesting additional preparation time in this regard. Cf. Smith, 626 F.2d at 798-99 (finding no ability to cure when opposing party given only eleven minutes to prepare cross-examination of surprise witness). And Roadway does not even claim that allowing the testimony of these two witnesses disrupted the trial court proceedings or that Roberts's counsel acted wilfully or in bad faith.[7]

---

[7] In its reply brief, Roadway suggests that the delay may have been due to bad faith. As Roadway failed to make this argument in its opening brief, we need not consider that challenge to the district court's findings. See Headrick v. Rockwell Int'l Corp., 24 F.3d 1272, 1277-78 (10th Cir. 1993). In any case, we are doubtful that Roadway's argument to this effect is meritorious. The company's claim is that prior to trial, Gaddy told Roberts about the statement by Haag. There is no indication, however, that Roberts's counsel was informed of this disclosure until trial was underway. Further, the record indicates that Roberts's counsel only learned of the statements through Hopson and Gaddy, not through his client.

As to Roadway's third objection, because the district court made it clear that Roadway would have ample opportunity to cross-examine Hopson and Gaddy and it could recall Haag as part of its case-in-chief to deny making the statements, see Appellant's App. at 563-64, it did not abuse its discretion in refusing to allow Haag to be called in surrebuttal.

**D**

Roadway's fourth grounds for appeal is that the jury instructions and verdict form were erroneous. "When reviewing a claim of error relating to jury instructions, the instructions must be read and evaluated in their entirety." United States v. Denny, 939 F.2d 1449, 1454 (10th Cir. 1991). Moreover, a claim of error in the jury instructions is to be reviewed "after examining the record as a whole." Denbo v. United States, 988 F.2d 1029, 1034 (10th Cir. 1993). Appellant has provided neither the instructions given to the jury nor a complete record of the proceedings on which those instructions were based. We therefore cannot consider Roadway's objections to the jury instructions.

Even though appellant has included in the record on appeal a copy of the verdict form used by the district court and a copy of the verdict form it urged in the alternative, without the jury instructions we are not well equipped to assess the company's objections to the verdict form. For instance, we cannot determine whether there is merit to the contention that the verdict form permitted the jury

"to mistakenly find unlawful retaliation based on matters not prohibited by Title VII or Section 1981, such as disputes, grievances and claims of retaliation under the Labor Management Relations Act." Appellant's Br. at 33. The verdict form asks only: "Did Defendant Roadway Express retaliate against Plaintiff Roberts?" Appellant's App. at 9. Without the instructions that presumably defined "retaliation," we cannot determine whether this may have confused the jury. In effect, therefore, the failure to provide us with the jury instructions leaves us unable to review Roadway's objections to the verdict form.[8]

## E

Roadway next argues that the evidentiary record, when corrected for the allegedly improper admission of the Hopson and Gaddy testimony, is insufficient

---

[8] The only challenge we could review is the claim that the verdict form misstates the law by not distinguishing between findings under Title VII and § 1981 and by not requiring the jury to identify the incidents that constitute retaliation. See Appellant's Br. at 31. Roadway's brief, however, provides no legal authority and little argument on either of these two points beyond the bare assertion of error. See United States v. Hardwell, 80 F.3d 1471, 1492 (10th Cir. 1996) ("[Defendant] has waived this issue by failing to make any argument or cite any authority to support his assertion."), modified on other grounds, 88 F.3d 897 (10th Cir. 1996). As best as we can tell, Roadway's argument on the first point is that without a verdict form distinguishing between Title VII and § 1981, the jury could have been "confus[ed] concerning incidents of retaliation within the meaning" of the two statutes. See Appellee's Br. at 33. As the district court noted, however, the elements of a retaliation claim are the same under both legislative enactments, see Thomas, 111 F.3d at 1513, so there is no danger of prejudicial confusion. Roadway's argument on the second point fails for the same reason as its claim that the verdict form may have allowed the jury to base retaliation on events not actionable as such. Without some showing that the court misinstructed the jury on retaliation, we will not assume that the jury based its decision on non-actionable events.

to support the punitive damages award. This argument fails for two reasons. First, as an insufficiency claim, it is not reviewable in the absence of a complete record. See Vasquez, 985 F.2d at 494-95. Second, it rests on claims of error that we have already rejected.

## F

Appellant argues that the district court erred in allowing Roberts's retaliation claims for compensatory and punitive damages to go to the jury because these claims were based on both 42 U.S.C. § 1981 and Title VII. Roadway does not argue that these statutes do not support the award of compensatory and punitive damages in retaliation cases. Instead, Roadway insists that it was error to allow the jury to decide both claims because compensatory and punitive damages can only be obtained under Title VII where recovery under § 1981 is unavailable. See 42 U.S.C. § 1981a(a)(1).

Roadway's position is not illogical. Section 1981a(a)(1) provides that a Title VII plaintiff may recover compensatory and punitive damages "provided that the complaining party cannot recover under section 1981 of this title." Id. (emphasis added). As Roberts can recover such damages under 42 U.S.C. § 1981, he should therefore not be able to do so under Title VII also. Thus, argues

Roadway, his Title VII claims for damages should not have been submitted to the jury.[9]

This provision may do no more than bar double recovery, however, and thus might not prevent simultaneous suits under both provisions, even where both causes of action are premised on exactly the same set of facts. See, e.g., Dunning v. General Elec. Co., 892 F. Supp. 1424, 1431 (M.D. Ala. 1995) (discussing this and alternative interpretations of statutory language).

Ultimately, however, we need not resolve this debate. Roberts based his § 1981 and Title VII retaliation claims on precisely the same facts; both statutes required him to establish the same elements to recover; and, so far as we can tell, the jury was instructed on both causes of action. Roadway makes no allegation that the jury actually awarded recovery on both statutory violations, and we cannot assume that the jury instructions erred by allowing such double recovery or recovery under Title VII only. Therefore, because the showing required to establish retaliation is identical under § 1981 and Title VII, any error in the submission of both claims to the jury is per se harmless. The jury necessarily found all the elements needed to sustain the damages award under § 1981, and we will therefore not undo the judgment below.

---

[9] This position is not without some support. See, e.g., Earvin v. Warner-Jenkinson Co., No. 4:94 CV DDN, 1995 WL 137437, at *2 (E.D. Mo. March 10, 1995) (dismissing Title VII claim where § 1981 claim available).

**G**

Roadway next contends that Roberts's Title VII action is based in part on actions that occurred more than 300 days prior to the date Roberts filed his EEOC complaint. We need not consider the merits of this claim because any error established would necessarily be harmless. As we have noted above, the jury's verdict is fully sustainable under 42 U.S.C. § 1981. Because that provision does not specify a time period in which claims must be brought, we look to the analogous state law for a limitations period, see 42 U.S.C. § 1988(a), and apply Colorado's residual two-year statute of limitations for personal injury actions. See Reynolds v. School Dist. No. 1, 69 F.3d 1523, 1532 (10th Cir. 1995) (applying Colo. Rev. Stat. § 13-80-102(1)(i)).[10] By Roadway's admission, Roberts brought his § 1981 action on January 13, 1995. See Appellant's Br. at 3. All matters relating to the claim of retaliation occurred less than two years before that date. Consequently, any error in failing to apply the statute of limitations under Title VII is harmless.

**H**

---

[10] Injuries claimed under § 1981 are best characterized as injuries to personal rights, and, thus, borrow the statute of limitations period for personal injury actions. See Reynolds, 69 F.3d at 1532 n.12. Further, "[w]here a state provides for multiple statutes of limitations for different types of personal injuries, we look to the general or residual statute for personal injury actions." Id. (citing Owens v. Okure, 488 U.S. 235, 249-50 (1989)).

Finally, Roadway maintains that, regardless of the merits of Roberts's retaliation claim, the attorneys' fees awarded should be substantially reduced. Roberts's attorneys sought $189,235 in fees, see Appellant's App. at 30, and were awarded just over 90% of this amount, see id. at 123. The district court reasoned that although Roberts did not prevail on his hostile work environment claim, that claim and his successful retaliation claim "ar[ose] out of a common core of facts." Appellee's Supp. App. at 367. The court thus found that "fees should not be discounted in connection with work that was done on the hostile work environment claim versus the retaliation claim." Id. at 388. The court did reduce the fee request for duplicative and irrelevant work. See id. at 390. The district court also noted that the award reflected the "excellent result" obtained by Roberts's attorneys. Id. at 389 (quoting Hensley v. Eckerhart, 461 U.S. 424, 435 (1983)).

The standards for awarding fees under § 1981 and Title VII are identical. See Carter v. Sedgwick County, 36 F.3d 952, 956 (10th Cir. 1994). "Determining the amount of such an award is committed to the district court's discretion. Underlying findings are reviewed under the clearly erroneous standard, while the district court's statutory interpretation and legal analysis are subject to de novo review." Id. (citations omitted). "The presumptively 'reasonable attorney's fee' [available to parties prevailing in § 1981 actions] is the 'product of reasonable

hours times a reasonable rate.'" Id. (quoting Blum v. Stenson, 465 U.S. 886, 897 (1984)). Under this standard, we believe the fee award was within the district court's discretion.

Roadway's objection is twofold: first, that the award should have been reduced because Roberts's attorneys only achieved partial success; and second, that counsel failed to provide contemporaneous billing records sufficient to substantiate the hours claimed. Both objections fail.

Where claims are based on related legal theories or a common core of facts, the court must focus on the significance of the overall relief obtained. See Ramos v. Lamm, 713 F.2d 546, 556 (10th Cir. 1983). Furthermore, where the results obtained are excellent, there should be no reduction for hours reasonably expended. See id. We cannot disagree with the district court's findings that the claims were related and dependant on a common core of facts. Many of the retaliatory incidents alleged by Roberts formed part of his hostile work environment claim as well. Moreover, his efforts to attribute racial animus to these acts in furtherance of his hostile work environment claim necessarily relate to the establishment of pretext in the retaliation claims. No reduction should be made for the failure to prevail on the hostile work environment claim.

We are not unsympathetic to appellant's argument that the records submitted by Roberts's three attorneys do not meet the standards enunciated in

Ramos.  See id. at 553 (requiring district court judges to inform lawyers that they must keep "meticulous, contemporaneous time records" if they intend to seek attorney fees under § 1988).  Roberts's counsels' records are not a model of meticulousness.  The district court, however, accepted the contention of counsel that the time-sheets submitted were not reconstructed after the event, and we have no reason to find that factual determination clearly erroneous.  In addition, the vagueness of which Roadway complains largely relates to the failure to distinguish work done in relation to the hostile work environment claim.  As we have noted, in the particular circumstances of this case, that failure is not significant.  Furthermore, the district court did make reductions for duplication and for unrelated work.  We recognize that the billing records submitted to the district court would benefit from greater specificity, but cannot conclude that the district court abused its discretion in awarding attorneys' fees.

**AFFIRMED**.