**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**APR 25 1997**

**PATRICK FISHER**
**Clerk**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**
**TENTH CIRCUIT**

---

RONALD K. THOMAS,

      Plaintiff-Appellant,

v.

DENNY'S, INC., a California
corporation,

      Defendant-Appellee,

No. 95-5146

---

Appeal from the United States District Court
for the Northern District of Oklahoma
(D.C. No. 91-C-715-C)

---

D. Gregory Beldsoe, Tulsa, Oklahoma (G. Steven Stidham and Brian S. Gaskill of
Sneed, Lang, Adams & Barnett, Tulsa, Oklahoma, with him on the briefs), for
Plaintiff-Appellant.

J. Patrick Cremin (Frank M. Hagedorn and Judith A. Colbert with him on the
brief) of Hall, Estill, Hardwick, Gable, Golden & Nelson, P.C., Tulsa, Oklahoma,
for Defendant-Appellee.

---

Before **SEYMOUR**, Chief Judge, **PORFILIO** and **EBEL**, Circuit Judges.

---

**SEYMOUR**, Chief Judge.

Ronald K. Thomas brought this action under 42 U.S.C. § 1981 and 42 U.S.C. §§ 2000e et seq (Title VII) against his former employer, Denny's, Inc. (Denny's). Mr. Thomas alleged that he was denied promotions because of his race and in retaliation for the filing of discrimination charges, and that his failure to be promoted resulted in his constructive discharge. The discrimination and retaliation claims under section 1981 were tried to a jury, which returned a verdict for Denny's. The district court ruled at trial that the evidence was insufficient to send the constructive discharge claim to the jury.[1] The court subsequently found against Mr. Thomas on his parallel Title VII claims.

On appeal, Mr. Thomas contends the trial court erred in instructing the jury on the definition of one of the elements of a prima facie case of discrimination under section 1981. He also contends the court erred in refusing to give a

---

[1] This action was filed September 12, 1991. Under then-existing law, a discriminatory discharge claim was not actionable under 42 U.S.C. § 1981. See Patterson v. McLean Credit Union, 491 U.S. 164, 179-80 (1989). "However, a racially discriminatory failure to promote [was] actionable under § 1981 if 'the promotion rises to the level of an opportunity for a new and distinct relation between the employee and the employer.'" Patrick v. Miller, 953 F.2d 1240, 1251 (10th Cir. 1992) (quoting Patterson, 491 U.S. at 185). Although The Civil Rights Act of 1991, enacted November 21, 1991, in part overrode the Supreme Court's restrictive reading of section 1981 in Patterson, see id. at 1251 n.6, that Act does not apply retroactively, see Simons v. Southwest Petro-Chem, Inc., 28 F.3d 1029, 1032 (10th Cir. 1994). In this case, Denny's agreed that the promotions sought by Mr. Thomas were within the narrow ambit of section 1981 as construed in Patterson. As we discuss infra part VI, the court and the parties erroneously considered the constructive discharge claim under section 1981.

"mixed-motives" instruction, in failing to submit the constructive discharge claim to the jury, and in limiting the damages to the two year period prior to the filing of the lawsuit. We agree that the court's definition of the prima facie case was erroneous, and that the jury should have been given a "mixed-motives" instruction. Accordingly, we reverse the jury verdict on the section 1981 claims and remand for further proceedings. We also agree that the court's ruling in favor of Denny's on the Title VII claims must therefore be reversed. However, we affirm the court's refusal to send the constructive discharge claim to the jury, and we conclude that the court's limitation on the period for which Mr. Thomas could recover damages was proper.[2]

I

BACKGROUND

Mr. Thomas, who is an African American, began his employment at Denny's in 1978 as a dishwasher/busboy. He was promoted to the position of cook in 1979 and soon became a trainer for new cooks. He first expressed

---

[2] Mr. Thomas also asserts on appeal that the district court erred in refusing to allow a witness to testify about Mr. Thomas' comparative qualifications, and in failing to adequately separate the race and retaliation claims for the jury. Since the section 1981 claims must be retried and these issues may not arise on retrial, we do not consider them here.

interest in promotion to management in 1981. The promotion procedure at Denny's was not particularly structured. The turnover was high and the company was always looking for managers. Ordinarily, a general manager would recommend to a district manager that a particular employee under the general manager's supervision should be considered for promotion. Mr. Thomas was mentioned by several of his general managers as a likely candidate for promotion to management, and was interviewed a number of times. In 1984, he was interviewed by district manager Michael Kearney. In 1987, he had interviews with Debbie Reynolds, a district manager, and with Kenneth Agorichas, the personnel manager. In 1989, he was interviewed by district manager Herbert Rapier, and in 1992 he interviewed with district manager Hassib Darweesh and human resources manager Tom Taylor. At the time of each interview with a district manager, Mr. Thomas had been recommended for promotion by at least one of his general managers. In each instance in which Mr. Thomas was not promoted, the position was filled with a non-African American.

Irene Johnson, a general manager, testified that she believed Mr. Thomas was qualified for promotion as early as 1983. She recommended him to Ms. Reynolds in 1987, to Mr. Agorichas in 1988, and subsequently approached Mr. Rapier to express her interest in promoting Mr. Thomas. Mr. Thomas also presented the testimony of general manager Masood Kasim, who recommended

-4-

Mr. Thomas to Ms. Reynolds several times, and to Mr. Rapier and Mr. Darweesh. Both Ms. Johnson and Mr. Kasim testified that their personal experience in supervising Mr. Thomas was the basis for their belief that he was qualified to be promoted to management. In addition, Shoib Ahmed, who worked with Mr. Thomas when they were unit aids for Ms. Johnson, testified that Mr. Thomas' performance as a unit aid was outstanding.[3] Mr. Thomas also presented evidence that his former manager, Joe Smith, stated during a state human rights investigation that Mr. Thomas was at least as promotable as candidates hired off the street into the management training program.

Mr. Thomas filed a discrimination complaint with the Oklahoma Human Rights Commission in 1986. Ms. Johnson testified that when she brought up Mr. Thomas' name to Ms. Reynolds for promotion, Ms. Reynolds stated that they had a problem with Mr. Thomas, namely his suit against Denny's. When Ms. Johnson mentioned Mr. Thomas' promotion to Mr. Agorichas, he too mentioned that Mr. Thomas had a suit against Denny's. Mr. Rapier told Ms. Johnson that they would never allow Mr. Thomas to become a manager because he had sued Denny's. Mr. Kasim testified he told Mr. Darweesh that he wanted to take Mr. Thomas as a

---

[3] A unit aid runs the restaurant in the absence of a manager or assistant manager. The experience was often a stepping stone to a management position at Denny's. Mr. Thomas was a unit aid at Ms. Johnson's restaurant for several months along with Shoib Ahmed.

manager and asked why he had not been promoted. Mr. Darweesh stated: "Would you promote somebody who has sued?" Aplt. app. at 123.

Denny's presented evidence that Mr. Thomas did not answer questions well in his interviews, and was uncomfortable and unable to make eye contact. The interviewers felt that Mr. Thomas did not have a clear understanding of the goals and functions of management. Although Mr. Thomas was provided with management promotion packets, he did not complete them. These packets were not requirements for promotion, but were viewed as useful tools for assessing management potential.[4] Mr. Thomas was also advised to take some relevant college courses, which he did not do.

II

FAILURE TO PROMOTE

Mr. Thomas argues the trial court improperly instructed the jury on the element of a prima facie discrimination case that requires a plaintiff to show he

---

[4] An assistant manager was assigned to meet with Mr. Thomas to help him work on the material in the packets. Although Mr. Thomas missed several of these meetings, he testified that he was often kept waiting for long periods of time while the assistant manager worked with another management candidate, that meetings were set for 2:00 a.m., and that many of the meetings were scheduled early on a morning after Mr. Thomas had worked a late shift.

was qualified for the position sought. "We review a district court's refusal to give a requested jury instruction for abuse of discretion. However, we review de novo the question of whether the court's instructions, considered as a whole, properly state the applicable law and focus the jury on the relevant inquiry." York v. American Tel. & Tel. Co., 95 F.3d 948, 953 (10th Cir. 1996) (citation omitted).

The framework for assessing discrimination claims that are not based solely on direct evidence is well known. The plaintiff has the initial burden of establishing a prima facie case. See McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973). If the plaintiff does so, the defendant then has the burden of articulating a "legitimate, nondiscriminatory reason for the employee's rejection." Id. The plaintiff must then be afforded a full and fair opportunity to show that the employer's proffered reason was in fact a pretext for unlawful discrimination. See id. at 804. Although this analytical framework was first articulated in a Title VII case, it applies as well to claims under section 1981. See Durham v. Xerox Corp., 18 F.3d 836, 839 (10th Cir.), cert. denied, 115 S. Ct. 80 (1994).

> To establish a prima facie case of failure to be promoted on the basis of [race] discrimination, a plaintiff must show: (1) that []he was a member of a protected class; (2) that []he was qualified for the position; (3) that []he was rejected; and (4) that the position was filled by someone who was not a member of the protected class.

Kenworthy v. Conoco, Inc., 979 F.2d 1462, 1469 (10th Cir. 1992).

Here we are concerned with the second element, the requirement that a plaintiff show he was qualified for the position sought. The district court defined this element for the jury as follows:

> To show that he was qualified, plaintiff must show that he possessed the necessary requirements for the position he sought. You should consider evidence concerning the education, training or experience necessary to perform the job. The plaintiff is not required to prove his qualifications were superior relatively [sic] to other employees in like positions. <u>The plaintiff must prove, however, that he was at least as well qualified for the position as the person hired instead of him.</u>

Aplt. app. at 19 (emphasis added). Mr. Thomas contends the court erred in adding the italicized sentence, arguing that it is directly contrary to this court's holding in <u>Kenworthy</u>.[5] We agree.

In <u>Kenworthy</u> we held the district court misapplied the law by holding that the defendant's proffered nondiscriminatory reasons for the plaintiff's rejection could prevent the plaintiff from establishing a prima facie case. 979 F.2d at

---

[5] Notwithstanding the concession in its brief that Mr. Thomas had properly objected below, Denny's suggested for the first time at oral argument that Mr. Thomas did not adequately inform the trial court of his objection to this instruction in light of <u>Kenworthy</u>. This argument not only comes too late, <u>see</u> <u>Durham v. Xerox Corp.</u>, 18 F.3d 836, 841 n.4 (10th Cir.), <u>cert. denied</u>, 115 S. Ct. 80 (1994), but our review of the record reveals that it is utterly lacking in merit. The exchange between court and counsel, as well as the court's order denying Mr. Thomas' motion for new trial, clearly reveal that the court understood the nature of the objection and simply did not agree with it. Indeed, counsel for Mr. Thomas quoted the relevant portion of <u>Kenworthy</u> to the court, which dismissed it as "the rhetoric of the appellate judges," aplt. app. at 136, and stated "[i]t can't be the law. That just can't be the law," <u>id.</u> at 137.

1469-70. We pointed out that relying on a defendant's reasons for the adverse action as a basis for ruling against a plaintiff at the prima facie stage raises serious problems under the McDonnell Douglas framework because it frustrates a plaintiff's ability to establish that the defendant's proffered reasons were pretextual. See id. at 1470. If at the prima facie stage the factfinder credits the reasons offered by the defendant for the failure to be promoted, the jury is not required to even consider the plaintiff's evidence on the critical issue of pretext. In Kenworthy and in MacDonald v. Eastern Wyoming Mental Health Ctr., 941 F.2d 1115 (10th Cir. 1991), upon which Kenworthy relied, we were concerned with subjective qualifications. Such subjective criteria "are particularly easy for an employer to invent in an effort to sabotage a plaintiff's prima facie case and mask discrimination." Ellis v. United Airlines, Inc., 73 F.3d 999, 1005 n.8 (10th Cir.), cert. denied, 116 S. Ct. 2500 (1996). To avoid this result, we held, in agreement with other courts addressing the issue, that the employer's subjective reasons are not properly considered at the prima facie stage, and should instead be "considered in addressing whether those articulated reasons are legitimate or merely a pretext for discrimination." Id. Applying our holding, we stated that a prima facie showing can be made through credible evidence that a plaintiff was qualified even if that evidence was disputed by the employer, and that this burden may be met through the plaintiff's own testimony and that of co-workers who

were in a position to know the plaintiff's qualifications.  Id.[6]

In the instant case, as in Kenworthy and MacDonald, the qualifications at issue were purely subjective.  As Denny's conceded in oral argument, it had no posted objective criteria that were applied across the board to all candidates for promotion.  The record indicates that promotion decisions were made on an ad hoc basis, and were determined by the interviewer's subjective evaluation.  Mr. Thomas presented evidence through his own testimony and that of Ms. Johnson, Mr. Kasim, Mr. Ahmed, and Mr. Smith that he was qualified to be promoted.  This evidence was clearly sufficient under Kenworthy to establish a prima facie case and thus entitled Mr. Thomas to a proper instruction under which the jury could consider his evidence of pretext if it chose to credit his evidence of his qualifications.  Instead, the jury found that Mr. Thomas had not established a prima facie case under the erroneous instruction directing it to consider Denny's evidence that Mr. Thomas was not as qualified as those promoted.  Because the court improperly instructed the jury that such a finding eliminated the need for it to consider pretext, Mr. Thomas was deprived of the opportunity to show that

---

[6]Our holding in these circumstances may not be applicable to a case involving "objective hiring criteria applied to all applicants," Ellis v. United Airlines, Inc., 73 F.3d 999, 1005 n.8 (10th Cir.), cert. denied, 116 S.Ct. 2500 (1996), such as the weight qualifications at issue in Ellis, or the education and experience requirements involved in York v. American Tel. & Tel. Co., 95 F.3d 948, 952-54 (10th Cir. 1996).

Denny's proffered reasons were not worthy of credence.   Accordingly, we reverse the verdict on the discrimination claim under section 1981 and remand for a new trial under proper instructions.[7]

III

MIXED-MOTIVES INSTRUCTION

Mr. Thomas maintains the trial court erred in refusing to give the jury a "mixed- motives" instruction with respect to his claim that he was denied

---

[7] On appeal, Denny's relies upon St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502 (1993), to assert that the instruction here was proper.  We find nothing in that case to cast doubt upon our holding in Kenworthy.  In St. Mary's, the Court addressed whether "the trier of fact's rejection of the employer's asserted reasons for its actions mandates a finding for the plaintiff," id. at 504, and decided that it did not.  In passing, the Court reiterated its holding in Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 252-53 (1981), that a plaintiff must establish a prima facie case by a preponderance of the evidence.  That statement, however, does not shed light upon the issue here, namely, what evidence is properly considered by a factfinder in determining whether a plaintiff has met this initial burden.  The Court in St. Mary's likewise did not directly address the problem with which we were concerned in Kenworthy, that collapsing the first and second stages of the McDonnell Douglas inquiry would eliminate the plaintiff's opportunity to present evidence of pretext to the factfinder at a point when the factfinder would be able to consider it.  If anything, the analysis in St. Mary's supports the holding in Kenworthy.  The Court in St. Mary's described the prima facie requirements as "minimal," 509 U.S. at 506, and pointed out that what is not required to establish a prima facie case "is a degree of proof so high that it would, in absence of rebuttal, require a directed verdict for the plaintiff . . . .  Quite obviously, however, what is required to establish the McDonnell Douglas prima facie case is infinitely less than what a directed verdict demands," id. at 515.

-11-

promotions in retaliation for the filing of a discrimination complaint. In Price

Waterhouse v. Hopkins, 490 U.S. 228 (1989), the Supreme Court held that when a

discrimination case challenges an employment decision that may have been "the

product of a mixture of legitimate and illegitimate motives, . . . it simply makes

no sense to ask whether the legitimate reason was 'the "true reason."'" Id. at

247.[8] The Court therefore rejected the argument that "the plaintiff in a mixed-

motives case must squeeze [his] proof into Burdine's framework." Id. at 246-47.

The Court held that "once a plaintiff . . . shows that [an improper motive] played

a motivating part in an employment decision, the defendant may avoid a finding

of liability only by proving that it would have made the same decision even if it

had not allowed [the improper motive] to play such a role." Id. at 244-45

(footnote omitted). On appeal, Denny's asserts the instruction was not

appropriate here because Denny's did not request the instruction and because the

evidence did not warrant such an instruction in any event. We disagree with both

arguments.

Although the Court in Price Waterhouse described the burden-shifting

nature of the mixed-motives approach as "most appropriately deemed an

---

[8] The Civil Rights Act of 1991 superseded in part the mixed-motive
analysis set out in Price Waterhouse v. Hopkins, 490 U.S. 228 (1989). See 42
U.S.C. §§ 2000e-2(m), 2000e-5(g)(2)(B). Mr. Thomas does not argue on appeal
that the 1991 Act applies to him and we therefore do not address the issue.

affirmative defense," id. at 246, it does not follow from that statement that a

mixed-motives instruction is only available when requested by the defendant.

Indeed, in that case the defendant disputed both that any discrimination occurred

and that it played any part in the challenged decision. Id. at 255. As one court

has explained:

> The Price Waterhouse principle often leads to the paradoxical
> situation . . . of a plaintiff asking for a mixed-motive instruction.
> The Price Waterhouse issue does not arise for the trier of fact until
> the plaintiff has carried the burden of persuading the trier that the
> forbidden animus was a motivating factor in the employment decision
> but has failed to persuade the trier that non-discriminatory reasons
> proffered by the employer were pretexts and not also motivating
> factors. Once the presentation of evidence is sufficient to create this
> possibility, the employer has the option of defending on the Price
> Waterhouse ground that it would have made the same decision even
> in the absence of a discriminatory motive. Price Waterhouse is thus
> a defense. However, for tactical reasons, it is often only the plaintiff
> who asks for a Price Waterhouse instruction, for when requests to
> charge are submitted, the employer may well choose to avoid the
> burden-shifting language in the Price Waterhouse charge, hoping that
> the jury either will not find a forbidden animus or will believe the
> burden is on the plaintiff in the case of a mixed motive. We thus
> believe that the plaintiff will be entitled to a burden-shifting
> instruction on the Price Waterhouse defense where the evidence is
> sufficient to allow a trier to find both forbidden and permissible
> motives. In such circumstances, the failure to give such an
> instruction would create a risk that the jury, having agreed with the
> plaintiff's evidence that a forbidden animus played a motivating part
> in the employment decision but not with the plaintiff's contention
> that the employer's proffered explanations were pretextual, would
> mistakenly believe that the plaintiff had the burden of showing that
> the same employment decision would not have occurred in the
> absence of the forbidden motive.

Ostrowski v. Atlantic Mut. Ins. Cos., 968 F.2d 171, 181 (2d Cir. 1992). We agree

with the Second Circuit that a plaintiff is entitled to a mixed-motives instruction upon a proper evidentiary showing even if the defendant does not request one. Accord Kenworthy, 979 F.2d at 1471 ("[O]nce a plaintiff has shown that an improper reason was a substantial or motivating factor in the defendant's adverse treatment, the employer must prove by a preponderance of the evidence that it would have reached the same decision even absent the improper motive.").

We also conclude that Mr. Thomas made such a showing here. "A plaintiff will be entitled to the burden-shifting analysis set out in Price Waterhouse upon presenting 'evidence of conduct or statements by persons involved in the decisionmaking process that may be viewed as directly reflecting the alleged [retaliatory] attitude.'" Kenworthy, 979 F.2d at 1471 n.5 (quoting Ostrowski, 968 F.2d at 182). As set out above, Mr. Thomas presented evidence through the testimony of Ms. Johnson and Mr. Kasim that several people involved in the promotion decision process had stated that Mr. Thomas would not be considered for promotion because of his discrimination complaint. Although Denny's points out on appeal that some of these decisionmakers denied making the statements, such credibility determinations are for the jury to make upon a proper instruction. We therefore reverse on the section 1981 retaliation claim and remand for a new trial.

-14-

IV

PARALLEL TITLE VII CLAIMS


Mr. Thomas argues that in the event we reverse the jury verdicts on the section 1981 claims and remand for a new trial, as we have done, we must also reverse the district court's findings of fact and conclusions of law rejecting his parallel claims under Title VII.  We agree.

We considered these circumstances in <u>Skinner v. Total Petroleum, Inc.</u>, 859 F.2d 1439 (10th Cir. 1988) (per curiam).  In that case, as here, the plaintiff brought parallel actions under section 1981 and Title VII.  After concluding that the section 1981 claim had to be retried, we pointed out:

> In a case under Title VII and § 1981 arising out of the same facts, the commonality of factual issues between the § 1981 and Title VII claims is nearly all-encompassing.  The elements of each cause of action have been construed as identical, and a jury verdict on the issue of liability . . . under § 1981 is normally conclusive on the issue of liability in a parallel action under Title VII.

<u>Id.</u> at 1444 (citations omitted).

We further observed:

> The strictures of the Seventh Amendment are particularly applicable in a case where, due to the presence of both equitable and legal issues, trial is both to the jury and to the court.  In such a situation, when a case involves both a jury trial and a bench trial, any essential factual issues which are central to both must be first tried to the jury, so that the litigants' Seventh Amendment jury trial rights are not foreclosed on common factual issues.

Id. at 1443.

Because "the jury's findings on factual issues common to claims under §
1981 and Title VII are binding on the district court," id. at 1445 n.6, and because
we have held that the section 1981 claims here must be retried to the jury, we
must vacate the district court's ruling on the parallel Title VII claims as well to
preserve the parties' Seventh Amendment rights.

V

LIMITATION ON DAMAGES

Mr. Thomas contends the district court erred in instructing the jury it could
only award damages for discrimination and/or retaliation occurring after
September 12, 1989, the date two years prior to the filing of the lawsuit. The
court thus ruled that the award of damages was limited by the applicable statute
of limitations. Mr. Thomas maintains that he can recover damages beyond that
period under a theory of continuing violation, asserting that because the alleged
illegal acts began prior to the limitation period and continued up to the filing of
the suit, he is entitled to recover for all of the continuing course of conduct.

This continuing violation theory is a creation of federal law that arose in
Title VII cases. This theory recognizes that certain violations are continuing in

nature and provides that a claim asserting such a violation is timely if administrative charges are filed within the period applicable to the last act in the continuing series. See, e.g., United Air Lines, Inc. v. Evans, 431 U.S. 553, 561-62 (1977) (Marshall, J., and Brennan, J., dissenting). Although this theory thus allows a plaintiff's claims to encompass acts that would otherwise be time-barred by the relatively short limit for filing administrative charges, a plaintiff can only receive back pay for the two years prior to the filing of administrative charges. See id.; see also 42 U.S.C. § 2000e-5(g).

As an initial matter, we have some doubt that a principle of federal law pertaining to a Title VII limitation period should be applied to a section 1981 claim. Mr. Thomas relies on the opinion in Chung v. Pomona Valley Community Hosp., 667 F.2d 788, 791 (9th Cir. 1982), in which the court concluded that the continuing violation rule did apply to a section 1981 claim, observing that while state law might govern the choice of an applicable period of limitation, federal law would govern the expiration of that period. Chung, however, was decided prior to the Supreme Court's decision in Wilson v. Garcia, 471 U.S. 261 (1985), in which the Court held that when borrowing state limitation periods under 42 U.S.C. § 1988, a court must also borrow a state's "'provisions regarding tolling, revival, and questions of application.'" Id. at 269 n.17 (quoting Johnson v. Railway Express Agency, Inc., 421 U.S. 454, 464 (1975)).

-17-

Moreover, while the continuing violation theory as it functions in a Title VII case in essence extends the limitation period, it does not address the period within which damages can be recovered. That period, as we have stated above, is specifically limited by section 2000e-5(g) to the two years prior to the filing of administrative charges. See Kornegay v. Burlington Indus., Inc., 803 F.2d 787, 788 (4th Cir. 1986). Moreover, we agree with the court in Kornegay that because the continuing violation theory is a creature of the need to file administrative charges, and because a section 1981 claim does not require filing such charges before a judicial action may be brought, the continuing violation theory is simply not applicable. The state limitation period in a section 1981 suit serves the same function that section 2000e-5(g) performs in a Title VII case, that is, it provides a cap on the period for which damages can be recovered. Accordingly, the district court here properly instructed the jury that any damages awarded under section 1981 were to be limited by the applicable two year-statute of limitation.

VI

CONSTRUCTIVE DISCHARGE

Finally, we address Mr. Thomas' contention that the district court erred in refusing to send the constructive discharge claim to the jury. As we pointed out

in note one, supra, under the law in effect at the relevant time, a claim of discriminatory discharge was not actionable under section 1981. See Patterson v. McLean Credit Union, 491 U.S. 164 (1989). Thus the district court did not err in refusing to send the constructive discharge claim brought under section 1981 to the jury, even though the court did not rely on Patterson in so ruling.

A claim of constructive discharge is, however, cognizable under Title VII. The court here ruled that the evidence was not sufficient to create a fact issue on the claim and would presumably have reached the same result if the claim had been asserted under Title VII. Because we are remanding this case for further proceedings and vacating the district court's disposition of the Title VII claims, we address the merits of the trial court's disposition briefly in the interests of judicial economy.

A plaintiff asserting a claim of constructive discharge must produce evidence that the "'employer by its illegal discriminatory acts has made working conditions so difficult that a reasonable person in the employee's position would feel compelled to resign.'" Spulak v. K Mart Corp., 894 F.2d 1150, 1154 (10th Cir. 1990) (quoting Derr v. Gulf Oil Corp., 796 F.2d 340, 344 (10th Cir. 1986)). "'[P]roof of constructive discharge depends upon whether a reasonable [person] would view the working conditions as intolerable.'" Id. (quoting Derr, 769 F.2d at

344) (internal quotations omitted).[9]  Our review of the record reveals that the conditions of Mr. Thomas' employment, viewed most favorably to his claim, do not rise to the level necessary to create a fact issue on this claim, and that the district court was therefore correct in so ruling.

In sum, we REVERSE the jury verdict on the section 1981 claims asserting discriminatory and retaliatory failure to promote.  We also REVERSE the district court's disposition of the Title VII claims.  We REMAND these claims for further proceedings in light of this opinion.  We AFFIRM the district court's ruling that Mr. Thomas can recover damages only for the two years preceding the filing of his lawsuit, and we AFFIRM the lower court's disposition of the constructive discharge claim.

REVERSED in part, AFFIRMED in part, and REMANDED for further proceedings.

---

[9] Denny's argues on appeal that this claim must fail in part because Mr. Thomas presented no evidence that the actions of which he complains were taken by Denny's personnel with the specific intent to force him to resign.  We have held, however, that the employer's subjective intent is irrelevant and that the employer will be held to have intended the reasonably foreseeable consequences of its acts.  See Spulak v. K Mart Corp., 894 F.2d 1150, 1154 (10th Cir. 1990) (quoting Derr v. Gulf Oil Corp., 796 F.2d 340, 344 (10th Cir. 1986)).  Thus the lack of evidence of Denny's specific intent to force Mr. Thomas to resign does not, of itself, defeat his constructive discharge claim.