**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JAN 7 2003**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

RANDALL B. GODINET,

      Plaintiff - Appellee,

v.

MANAGEMENT AND TRAINING
CORPORATION, doing business as Flint
Hills Job Corps Center,

      Defendant - Appellant.

Nos. 01-3318 & 02-3042
D.C. No. 96-CV-4127-DES
(D. Kansas)

**ORDER AND JUDGMENT**[*]

Before **HENRY**, **PORFILIO**, and **BRISCOE**, Circuit Judges.

Defendant Management and Training Corporation appeals from orders in the

United States District Court for the District of Kansas awarding compensatory damages,

back pay, and prejudgment interest to Plaintiff Randall B. Godinet for intentional

---

[*]This order and judgment is not binding precedent, except under the doctrines of
law of the case, res judicata, and collateral estoppel.  This court generally disfavors the
citation of orders and judgments; nevertheless, an order and judgment may be cited under
the terms and conditions of 10th Cir. R. 36.3.

employment discrimination in violation of Title VII of the Civil Right Act of 1964.[1]

Plaintiff, a Samoan male formerly employed at Defendant's Flint Hills Job Corps Center in Manhattan, Kansas, alleged discrimination on the basis of race and color occurred (1) when he was not promoted to a supervisory position at Flint Hills; and (2) when he was not hired at Defendant's facility in Kittrell, North Carolina, both because of race and in retaliation of his pursuit of a discrimination claim against Flint Hills. After a week-long trial, on June 20, 2001, a jury found intentional discrimination on all claims and awarded compensatory damages totaling $20,800, pecuniary damages of $5,700, and punitive damages of $150,000. The district court entered judgment consistent with the jury verdict, awarding $21,251 in back pay, prejudgment interest of $17,248.85 and attorneys' fees and costs of $257,014.91. We exercise jurisdiction under 28 U.S.C. § 1291 and affirm.

Defendant, a corporation headquartered in Ogden, Utah, specializes in providing management, training, and staff for more than twenty "job corps" centers throughout the country under federal contracts with the Department of Labor. Through the job corps program, young adults, ages 16 to 21, are provided skills training and an opportunity to earn a GED, high school diploma and/or a vocational certificate.

---

[1] Defendant consolidated into the instant case an earlier appeal of an order granting Plaintiff attorneys' fees and costs. Because it did not discuss attorneys' fees in its briefs or at oral argument, we assume Defendant conceded the issue.

Since January 1992, Plaintiff had been working at Defendant's Flint Hills facility as a Residential Advisor within the Residential Living Department, one of three departments in the Group Life Division. About a month and a half later, he was promoted to the position of "prime shift" Senior Residential Advisor. Throughout his tenure, Plaintiff received above-average to excellent job evaluations. Plaintiff contended he was being groomed for a promotion to Residential Living Supervisor: he was selected for a one-week management training program in March 1993, participated in personnel decisions, was informally appointed for one month as acting Residential Living Supervisor and occasionally as acting Group Life Manager, and was chosen as the facility-wide employee-of-the-month in March, 1993.

In June 1993, Kim Matsen, then Residential Living Supervisor, resigned at Flint Hills to accept a post at the Kittrell Job Corps Center. Plaintiff was appointed as Acting Residential Living Supervisor until a decision was made regarding a long-term replacement. He relayed his interest in obtaining the position permanently to Tom Adams, Group Life Manager. Earlier, in April 1993, Plaintiff had informed Adams of an offer he received to serve as Executive Director of the Boys and Girls Club in Oceanside, California. Adams reassured Plaintiff and his wife that he was the top choice for the Flint Hills vacancy, should consider himself well-trained, and would be given an opportunity to interview. In reliance on Adams' assurances, Plaintiff rejected the outside offer.

On June 10, 1993, never having interviewed Plaintiff, Adams informed him that Kristen Johnson, the Counseling Supervisor, would transfer laterally to become Resident Living Supervisor. Approximately 18 months later, in December 1994, Johnson was transferred back to her position as Counseling Supervisor. Harold B.C. Brown, an African-American man, was hired as Residential Living Supervisor.

Plaintiff resigned from Flint Hills on June 11, 1993. Besides checking "no" on an exit interview form in response to the question, "Do you feel that the company provides equal opportunity for all employees?," Plaintiff filed no internal grievances. On the day he resigned, Plaintiff also applied for the position of Residential Living Manager at Kittrell, North Carolina, a department headed by his former boss, Matsen.

Matsen informed Plaintiff he was the top candidate for the position and recommended to her superiors, including Mose Watkins, Defendant's Utah-based Corporate Director of Group Life Operations and an African-American man, that Plaintiff, whom she deemed the more qualified candidate, be hired. However, shortly after Plaintiff applied to Kittrell, Watkins called Matsen to inform her Edison Mosley, an African-American man who was earlier forced to resign from a position with Defendant for mishandling property, had been hired as Resident Living Manager.

Plaintiff alleged a "discriminatory swapping" scheme occurred at Flint Hills – Johnson was transferred to allow for the appointment of an African-American man first as Counseling Supervisor (on June 14, 1993) and then, when Johnson was transferred back

to her old position, as Residential Living Supervisor (in December 1994). In support of this theory, aside from Masten's testimony about his superior qualifications, Plaintiff offered the testimony of three Caucasian and Hispanic Flint Hills Counseling Department employees. They stated that at a meeting on or about June 14, 1993, Adams informed them they need not apply for a supervisory position, because, after viewing a picture of the Flint Hills staff, Watkins told Adams to hire an African-American counseling manager. The three employees then met with the Flint Hills Human Resources Supervisor, who confirmed that Defendant had to hire an African-American man.

Regarding his claims of discrimination and retaliation against Kittrell, Plaintiff testified that on or about July 2, 1993, he contacted Hank Owens, a corporate executive located at Defendant's Utah headquarters. Plaintiff told Owens he intended to file a discrimination claim against Flint Hills, and that he had applied for employment at Kittrell. Plaintiff testified that Owens stated Adams was "up to his old tricks," but did not further investigate. At trial, Owens testified he might have relayed the conversation to Watkins, his boss, and that corporate directives had been "suggested" at either Defendant's human resources or regional vice-president level to increase the number of African-Americans in management positions.

On appeal, Defendant urges us to reverse the jury verdict, contending the district court erred in refusing to grant judgment as a matter of law under Fed. R. Civ. P. 50 both at the conclusion of Plaintiff's case and at the close of all the evidence. Alternatively, it

requests a new trial, alleging the trial judge gave prejudicial jury instructions regarding mitigation and, in violation of the Federal Rules of Evidence, admitted irrelevant testimony. Finally, Defendant argues the punitive damages instruction was erroneous and the jury's award thereof unsupported by the evidence.

Section 703(a)(1) of the Civil Rights Act of 1964 provides that it is "unlawful employment practice for an employer . . . to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual . . . because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e--2(a) (1). Further prohibited is retaliation: an employer may not "discriminate against any of his employees or applicants for employment . . . because he has opposed any practice made an unlawful employment practice" by the 1964 Civil Rights Act. 42 U.S.C. § 2000e--3(a).

The burden shifting framework of ***McDonnell-Douglas Corp. v. Green*** applies in race discrimination trials. 411 U.S. 792 (1973). To sustain a prima facie case of race discrimination, a plaintiff must show: (1) he belongs to a racial minority (2) he applied for a position for which he was qualified; (3) he was rejected; and (4) the position was filled by a person of another race. ***Id.*** at 802. On appeal, Defendant concedes Plaintiff made out a prima facie case of discrimination against Flint Hills, and implicitly did so against Kittrell. Therefore, following a full trial on the merits, "the sequential analytical model adopted from *McDonnell-Douglas* . . . drops out and we are left with the single

overarching issue whether plaintiff adduced sufficient evidence to warrant a jury's determination that adverse employment action was taken against the plaintiff based on his race." *Tyler v. RE/MAX Mountain States, Inc.*, 232 F. 3d 808, 812 (10th Cir. 2002) (internal quotations omitted).

## I. Denial of Rule 50 Motions

We review de novo denials of Fed. R. Civ. P. 50 motions for judgment as a matter of law, applying the same legal standard as the district court, and construing the evidence in the light most favorable to the non-moving party. *Tyler*, 232 F.3d at 812. "Judgment as a matter of law is appropriate only if the evidence points but one way and is susceptible to no reasonable inferences which may support the opposing party's position." *Id.* (internal quotations omitted). We determine "only whether the jury verdict is supported by substantial evidence when the record is viewed most favorably to the prevailing party" and should not "retry issues, second guess the jury's decision making, or assess the credibility of witnesses." *Webco Indus., Inc. v. Thermatool Corp.*, 278 F.3d 1120, 1128 (10th Cir. 2002). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion, even if different conclusions also might be supported by the evidence." *Id.* (internal quotations omitted).

Defendant attempted to rebut Plaintiff's showing of discriminatory pretext by stressing the impressive education, work history, and supervisory skills of Johnson and Mosley. Requirements for the position of Resident Living Supervisor included a

bachelor's degree in a behavioral science or associated field and two years experience, one of which must have been in a supervisory capacity. Both chosen candidates had a college degree and substantial managerial experience with Defendant; by contrast, Plaintiff was one semester short of a bachelor's degree and had no supervisory experience at a job corps center.

Well-established case law supports Defendant's contention that we afford businesses considerable latitude in hiring decisions. *See, e.g., **Simms v. Okla.***, 165 F.3d 1321, 1330 (10th Cir. 1999) ("Our role is to prevent unlawful hiring practices, not to act as a 'super personnel department' that second guesses employers' business judgments"); ***Bullington v. United Air Lines, Inc.***, 186 F.3d 1301, 1319 (10th Cir. 1999) (at least in cases where qualification is only basis for alleged discrimination, "[t]he disparity in qualifications must be overwhelming to be evidence of pretext") (internal quotations omitted). Nevertheless, viewing the evidence in the light most favorable to Plaintiff as the prevailing party, we believe he presented "substantial evidence" of discrimination. Plaintiff had managerial experience in California, performed "acting" supervisor duties at Flint Hills, and was repeatedly assured by decision-makers that he was the top candidate for the vacancies at Flint Hills and Kittrell. Defendant inconsistently applied educational requirements; in numerous instances it accepted directly related experience instead of formal education. Brown had considerable experience and education, but previously had been passed over for a promotion and forced to resign from his position. Moreover,

Plaintiff did not rely solely on job qualifications; he also offered the testimony of the three employees about the Watkins directive on hiring African-Americans. Given the deference afforded the jury under Rule 50 and our limited scope of appellate review, we affirm the finding of intentional discrimination.

Defendant also contends Plaintiff failed to prove retaliation motivated the decision to reject his application at Kittrell. To establish a prima facie case of retaliation, a plaintiff must show: (1) he engaged in protected opposition to Title VII discrimination; (2) he suffered resultant adverse employment; and (3) a causal connection exists between the protected activity and the adverse employment action. *See Cole v. Ruidoso Mun. Sch.*, 43 F.3d 1373, 1380 (10th Cir. 1994). Defendant did not explicitly concede Plaintiff established a prima facie case of retaliation; however, we assume it did so implicitly because its appellate argument was devoted entirely to rebutting pretext. Among other evidence supporting Plaintiff's allegation, Owens testified it was "possible" that after the telephone call, he spoke with Watkins, and acknowledged he informed Don Myrtle, Regional Vice President of Management and Training Corporation, of the conversation. Again, because we defer to the jury's assessment in the absence of unreasonableness or lack of substantial evidence, we uphold the finding of retaliation.

## II. Jury Instructions on Calculation of Back Pay

We review a district court's refusal to give a requested jury instruction for abuse of discretion. However, we review de novo the question of whether the judge's instructions,

as a whole, properly stated the applicable law and directed the jury to the relevant inquiry. ***Thomas v. Denny's, Inc.***, 111 F.3d 1506, 1509 (10th Cir. 1997).

Defendant asserts the district court erred in failing to instruct the jury to reduce back pay damages by what Plaintiff earned from the date he was rejected from the position at Kittrell *until the date of trial*.  The court instead instructed that "lost wages" included "the amount plaintiff would have earned in his employment with Defendant if he had been hired at . . . Kittrell . . . June 1993 to June 1, 1994, minus the amount Plaintiff earned from other employment during this period."

Defendant would have applied an aggregate approach to calculation of back pay, allowing earnings in mitigating employment in one period (a year) to reduce wages in other years.  Accordingly, in this case, the excess amount earned by Plaintiff at Oceanside subsequent to June 1, 1994, would have offset the back pay award for the prior period of July, 1993, through May, 1994, thereby decreasing Plaintiff's award to zero.  Defendant offered no direct authority applying the aggregate mitigation method; it merely cited ***Wulf v. City of Wichita***, 883 F.2d 842, 871 (10th Cir. 1989), where, in a footnote, we stated "[t]he relevant time period for calculating an award of back pay begins with wrongful termination and ends at the time of trial" (internal quotations omitted).

In its Memorandum and Order on back pay, the district court held the jury's recommendation of $20,000 in lost wages advisory (and therefore not a potential reversible error), because "the amount of back pay awarded to a Title VII plaintiff is

committed to the sound discretion of the district court." Next, the court calculated back

pay through periodic mitigation, taking the amount Plaintiff would have earned for each

period and deducting the wages, if any, earned in other employment during that period.

Thus, earnings in one particular period which exceeded the amount Plaintiff would have

earned absent discrimination did not operate to reduce the back pay award for any other

period.[2]  Rejecting the aggregate approach, the court explained:

> In this particular case . . . plaintiff actually earned more money in his
> replacement employment than he would have if he had been hired by
> defendant.  Defendant argues, therefore, that plaintiff has in essence
> mitigated his back pay award to zero, for in totality he has no apparent
> financial loss.  This aggregate approach to mitigation does not take in to
> consideration any loss suffered at a particular point in time. . . .  While the
> aggregate approach endorsed by defendant seeks equity in the long run,
> such an approach in this case fails to adequately satisfy the very real and
> concrete period injuries sustained by plaintiff.

Calculating lost wages by the periodic mitigation method is well supported in case

law.  *See, e.g.*, **Darnell v. City of Jasper, Alabama**, 730 F.2d 653, 656-57 (11th Cir.

1984) (applying periodic basis under Title VII); **Eichenwald v. Krigel's, Inc.**, 908 F.

Supp. 1531, 1567 (D. Kan. 1995) (same); **Hartman v. Duffy**, 8 F. Supp. 2d 1, 6 (D.D.C.

1998) (noting "periodic mitigation is the preferred method for determining back pay

liability in discrimination cases").  Given the district court's careful comparison of the

---

[2] Note 42 U.S.C.A. § 2000e-5(g) endorses neither the periodic nor aggregate approach, providing only that "[i]nterim earnings or amounts earnable with reasonable diligence by the person or persons discriminated against shall operate to reduce the back pay otherwise allowable."  The goal of the statute is to make the plaintiff whole.

two methods and final calculation (and assuming, arguendo, the jury instructions on back pay are subject to our review), the district court acted within the scope of its equitable discretion in awarding Plaintiff $21,251 in back pay.

### III.  Admission of Employees' Testimony

We review a district court's evidentiary rulings for abuse of discretion.  ***Hampton v. Dillard Dept. Stores, Inc.***, 247 F.3d 1091, 1113 (10th Cir. 2001), reversing only if the ruling was "based on a clearly erroneous finding of fact or an erroneous conclusion of law, or if it manifests a clear error in judgment," ***Roberts v. Roadway Exp., Inc.***, 149 F.3d 1098, 1105-06 (10th Cir. 1998).

Based on Fed. R. Evid. 402[3] and 403[4], Defendant challenges the admission of Matsen's testimony regarding Plaintiff's abilities.  The district court properly deemed her testimony relevant and found that prejudice did not outweigh probative value.  Matsen's esteem for Plaintiff and recommendations for his promotion and hiring bolstered his

---

[3] Rule 402 provides:
> All relevant evidence is admissible, except as otherwise provided by the Constitution of the United States, by Act of Congress, by these rules, or by other rules prescribed by the Supreme Court pursuant to statutory authority. Evidence which is not relevant is not admissible.

[4] Rule 403 provides:
> Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

prima facie discrimination case and his rebuttal of Defendant's proffered non-discriminatory motives.

Further, Defendant contends the district court mistakenly admitted the testimony of the three employees regarding Adams' recitation of Watkins' directive to hire more African-American managers in the Group Life Division. Defendant mistakenly characterizes the testimony as irrelevant because Plaintiff never applied to the Counseling Department and the discussion at issue occurred after he resigned from Flint Hills.

First, while Adams relayed the preference for African-American managers on June 14, 1993, three days after Plaintiff's resignation, the testimony nevertheless related to events temporally close enough to evince the operation of discriminatory motives. Second, although Plaintiff never applied to Counseling, it was within the Group Life Division, and, along with Residential Living, was one of the departments to which Watkins and Adams referred. Thus the district court did not abuse its discretion in allowing the employees' testimony.

### IV. Punitive Damages

"Whether sufficient evidence exists to support punitive damages is a question of law reviewed de novo." *Fitzgerald v. Mountain States Tel. & Tel. Co.*, 68 F.3d 1257, 1262 (10th Cir. 1995). A plaintiff claiming a violation of federal civil rights must prove defendant's discrimination was malicious, willful, and in gross disregard of her rights. *Id.*

Defendant urges this court to vacate the imposition of $150,000 in punitive damages, claiming the jury instruction on vicarious liability for punitive damages and the award itself erroneous. Under **Kolstad v. American Dental Ass'n**, an employer cannot be liable for punitive damages if the manager's challenged actions "were contrary to the employer's good faith efforts to comply with Title VII." 527 U.S. 526, 546 (1999). We have explained that in addition to adopting anti-discrimination policies, an employer must "make a good faith effort to educate its employees about these policies and statutory prohibitions" and that **Kolstad** "itself suggests that the good-faith-compliance standard requires the employer to make 'good faith efforts to *enforce* an antidiscrimination policy.'" **Cadena v. Pacesetter Corp.**, 224 F.3d 1203, 1210 (10th Cir. 2000) (*citing* **Kolstad**, 527 U.S. at 546).

The district court instructed that the jury may not impose punitive damages if the decisions of Defendant's managerial employees were "contrary to defendant's good faith efforts to prevent and remedy discriminatory employment decisions." Defendant's rejected instruction would have barred punitive damages if "defendant had adopted anti-discrimination policies and made a good faith effort to educate its employees on those policies." The court's instruction properly reflected the law: use of the words "prevent and remedy" stressed the employer's need to enforce anti-discrimination policies.

Further, Defendant argues it met the **Kolstad** "good faith" requirements by adopting anti-discrimination policies and training some employees. While the record

- 14 -

indicates Defendant had anti-discrimination policies and educated some supervisors, it offered no evidence of the training of Adams, Myrtle, Owens, or Watkins, all implicated in this case. Additionally, Defendant failed to investigate the "no" response on Plaintiff's exit interview form or take action after Plaintiff, by telephone, informed Owens of his intention to file a discrimination suit against Flint Hills. *Kolstad* does not prevent the imposition of punitive damages, because a jury, better positioned to evaluate witness testimony, was entitled to credit Plaintiff's evidence of intentional, malicious discrimination and failure to enforce equal protection policies.

For the foregoing reasons, we **AFFIRM**.


ENTERED FOR THE COURT


John C. Porfilio
Senior Circuit Judge