**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**March 27, 2007**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

KATHERINE MCNULTY,

    Plaintiff-Appellant,

    v.

SANDOVAL COUNTY; and the
SANDOVAL COUNTY BOARD OF
COUNTY COMMISSIONERS,

    Defendants-Appellees.

No. 06-2121
(D.C. No. CIV-05-221 WJ/ACT)
(D. N.M.)

---

**ORDER AND JUDGMENT**[*]

---

Before **HOLMES**, **McKAY**, and **BRORBY**, Circuit Judges.

---

    Katherine McNulty appeals the district court's grant of summary judgment
to her former employer on her claims of retaliation in violation of Title VII of the
Civil Rights Act, 42 U.S.C. § 2000e-3(a). We have jurisdiction under 28 U.S.C.
§ 1291, and we AFFIRM.

---

[*]     After examining the briefs and appellate record, this panel has determined
unanimously to grant the parties' request for a decision on the briefs without oral
argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore
ordered submitted without oral argument. This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and
collateral estoppel. It may be cited, however, for its persuasive value consistent
with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

I.

Sandoval County, New Mexico employed Ms. McNulty as a personnel coordinator. Among her duties was teaching defensive driving to county employees, as required by the county's insurance policies. Such training sessions were considered effective only when taught by an instructor certified by the National Safety Council (NSC), and in the summer of 2003, Ms. McNulty's NSC certification was revoked because she failed to pay the NSC certain monies she owed for teaching defensive driving to non-county employees on her own time. In October 2003, her supervisor, Tammie Gerrard, learned of the problem and asked her to correct it. Because Ms. McNulty did not have the money to pay the NSC, she did not regain her certification, and another employee had to conduct the county's training sessions. During the period from August 2002 to November 2003, Ms. McNulty also was given oral and written reprimands for failing to return telephone calls, failing to complete workers' compensation paperwork, and failing to follow procedures and directions.

In June 2004, Ms. McNulty filed a written report complaining about harassment by the county's finance director, Leroy Arquero, stretching back to the spring of 2002. A few weeks later she supplemented her initial statement with another written statement. In these complaints, Ms. McNulty cited about ten or twelve incidents of harassment. For example, she complained that Mr. Arquero was verbally abusive to employees, including her. In March 2002, "he was

disrespectful and verbally abusive, including derogatory references to my gender and intelligence." Aplt. App., Vol. II at 290. In January 2003, he failed to move out of a doorway to an office she needed to enter, and as she attempted to pass through, "he made contact with [Ms. McNulty's] body in a manner that was clearly inappropriate." *Id.* at 292. In the summer of 2003, he summoned her and Ms. Gerrard to a meeting at short notice and did not provide them with handouts. Another incident was in fall 2003 when Mr. Arquero and two or three others were on an elevator. Ms. McNulty said she would wait for the next elevator, and as the doors closed she heard laughter. She assumed Mr. Arquero had made a remark about her. In June 2004, another employee reported to her that Mr. Arquero had spoken about her in a "venomous" manner, *id.* at 293-94, and Ms. McNulty said he through "eye contact and body language" treated her with "obvious hostility and disrespect" when she encountered him by the reception desk, *id.* at 287.

On July 9 and August 3, Ms. Gerrard issued written reprimands to Ms. McNulty. The July 9 reprimand addressed Ms. McNulty's insubordination and violation of county policies regarding smoking in vehicles. The August 3 reprimand addressed Ms. McNulty's failure to timely report claims to the county's insurance carrier, causing the insurer to deny the claims, and her failure to timely transmit notice of a lawsuit to the insurer.

On August 12, Mr. Arquero complained in writing that Ms. McNulty had committed racial harassment against him. He indicated that she had used a racial

slur about him a year and a half earlier. He complained that she was difficult to deal with, which he attributed to her racial prejudice. He also complained that her decision to complain only about him, and not the three white employees who were also involved in the fall 2003 elevator incident, showed her racial bias. The county investigated both Ms. McNulty's and Mr. Arquero's complaints.

On August 20, 2004, Ms. Gerrard issued Ms. McNulty a notice of proposed discipline based on her failure to regain her NSC certification. After a pre-discipline hearing, by notice dated September 10, Ms. McNulty was suspended without pay for three days and ordered to bring her certification current by October 1. Ms. Gerrard also ordered her to prepare a list of employees who had taken defensive driving classes from her while she lacked her certification. On the same day, Ms. McNulty filed a complaint of sex discrimination and retaliation with the Equal Employment Opportunity Commission (EEOC). During the remainder of September and October she did not comply with either of Ms. Gerrard's orders. A county hearing officer upheld the suspension.

On November 8, Ms. Gerrard issued Ms. McNulty a notice of proposed discipline that indicated the county was considering terminating her employment for four reasons: (1) her continued failure to reinstate her NSC certification and to provide the list of employees whose training was not effective; (2) her failure in October 2004 to assist another employee in locating paperwork required to

complete the leasing of a fleet of vehicles; (3) her continued failure from April 2004 to November 2004 to complete paperwork necessary for an insurance claim; and (4) the county's belief that she had used racial slurs about Mr. Arquero. After receiving the notice, Ms. McNulty sent a check to the NSC to bring her certification current. The check was never cashed, and Ms. McNulty never regained her NSC certification. After holding a pre-discipline hearing, the county terminated her employment on November 16, 2004, for the four reasons listed in the notice of proposed discipline. Another county hearing officer upheld that decision as well.

Ms. McNulty brought claims against the county and its commissioners for sexual harassment and retaliation under Title VII, 42 U.S.C. §§ 2000e-2, 2000e-3; for violations of her constitutional rights under 42 U.S.C. § 1983; and for violations of state statutes and state common-law causes of action. After defendants answered her first amended complaint, she sought to further amend her complaint to add Mr. Arquero and Ms. Gerrard as defendants under Title VII and § 1983 and to add new claims under Title VII and New Mexico's public records law. The district court denied her motion to amend and granted summary judgment to defendants. It held that her quid pro quo sexual harassment claim was barred for failure to timely file a complaint with the EEOC. It further held that her hostile work environment sexual harassment claim failed because most of the conduct she complained about did not constitute discriminatory, unwelcome

sexual conduct, and the conduct that did qualify was not pervasive or sufficiently severe. With regard to her retaliation claim, the court determined that she had not shown the defendants' actions were pretext for discrimination, and that even assuming the fourth ground for termination constituted evidence of retaliation, the evidence as a whole showed that the defendants would have made the same decision even if the retaliatory ground had not been considered. Finally, it disposed of her remaining federal claims and declined to exercise supplemental jurisdiction over the remaining state-law claims, dismissing them without prejudice. Ms. McNulty appeals the grant of summary judgment to defendants on her retaliation claims and the court's refusal to allow her to amend her complaint.

II.

On appeal, Ms. McNulty has abandoned the majority of her claims. Focusing primarily on the district court's rejection of her Title VII retaliation claim under a mixed-motive analysis, she argues the district court erred in three ways: (1) allowing defendants to rely on a mixed-motive analysis, which is an affirmative defense that was not raised in their answer and was not adequately raised in their written summary judgment submissions; (2) finding that no reasonable jury could have found in Ms. McNulty's favor; and (3) not allowing her to amend her complaint.

A.

Ms. McNulty first complains that defendants did not raise a mixed-motive analysis until oral argument on their summary judgment motion. She argues that the district court erred in employing this untimely-raised affirmative defense in granting summary judgment to defendants. We review this issue for abuse of discretion. *See Ahmad v. Furlong*, 435 F.3d 1196, 1202 (10th Cir. 2006) (applying abuse-of-discretion standard of review to the question "whether an affirmative defense may first be raised in a motion for summary judgment").

While Ms. McNulty is correct that the Supreme Court has described the mixed-motive approach as "most appropriately deemed an affirmative defense," *Price Waterhouse v. Hopkins*, 490 U.S. 228, 246 (1989), *modification by statute recognized in Desert Palace, Inc. v. Costa*, 539 U.S. 90, 98-102 (2003), this court has indicated that a mixed-motive analysis should be employed whenever it is appropriate, not necessarily only when the defendant invokes it. In *Thomas v. Denny's, Inc.*, 111 F.3d 1506, 1511-12 (10th Cir. 1997), the defendant asserted that a mixed-motive instruction was not appropriate and did not request one. Noting *Price Waterhouse*'s affirmative-defense characterization, this court nevertheless stated "it does not follow from that statement that a mixed-motives instruction is only available when requested by the defendant." *Id.* at 1512. Quoting the Second Circuit, it continued:

"*Price Waterhouse* is thus a defense. However, for tactical reasons, it is often only the plaintiff who asks for a *Price Waterhouse* instruction . . . . We thus believe that the plaintiff will be entitled to a burden-shifting instruction on the *Price Waterhouse* defense where the evidence is sufficient to allow a trier to find both forbidden and permissible motives."

*Id.* (quoting *Ostrowski v. Atl. Mut. Ins. Cos.*, 968 F.2d 171, 181 (2d Cir. 1992)).

The district court interpreted Ms. McNulty's arguments and the evidence presented before it as requiring a mixed-motive analysis. Given that defendants cited four reasons for terminating Ms. McNulty's employment, and that one of the reasons was arguably retaliatory while the others were unquestionably legitimate performance-based concerns, that interpretation was reasonable.[1] We do not find the district court abused its discretion by considering the mixed-motive approach.

B.

Ms. McNulty also argues that there was insufficient evidence that defendants would have terminated her employment even in the absence of the retaliatory ground (the fourth ground for termination cited in the notice of discipline). She contends that the fourth ground must have been "the straw that

---

[1]    Ms. McNulty contends that the fourth ground for discharge, that she used a racial slur in reference to Mr. Arquero, was retaliatory because Mr. Arquero only filed his complaint of racial harassment in response to her complaint of sexual harassment. We are not convinced that, even assuming Mr. Arquero's complaint was prompted by Ms. McNulty's complaint, the county's investigation of Mr. Arquero's complaint and its acting on the results of its investigation constitute retaliatory action by the county for purposes of Title VII. Like the district court, however, we assume for purposes of our decision that these statements may be direct evidence of retaliation.

broke the camel's back" because the other three grounds were either addressed by the three-day suspension or occurred before that suspension was issued.

Ms. McNulty's argument rests on a fundamental misconception. As the district court explained, the first three grounds for termination cited in the notice of discipline were not the same conduct underlying the three-day suspension. The suspension was based on Ms. McNulty's failure to regain her certification since Ms. Gerrard's initial request in October 2003. In contrast, the first ground for termination was based on Ms. McNulty's continued failure, from September 10 through November 8, 2004, to regain her certification. Moreover, the second ground for termination cited conduct in October 2004, which had not happened when the suspension was imposed in September. The third ground for termination cited conduct continuing from April to November 2004; again, the latter portion of that period was after the September suspension. Consequently, there is no indication that the fourth ground was "the straw that broke the camel's back."

As the district court concluded, no reasonable jury could conclude that Ms. Gerrard would not have terminated Ms. McNulty's employment in the absence of Mr. Arquero's allegations. Ms. McNulty failed to follow Ms. Gerrard's repeated instructions to regain her NSC certification, and thus she was unable to perform one of her job duties. She was disciplined for failing to perform other job duties several times in 2002 and 2003, before she ever filed her

complaints of discrimination, and her failures to fulfill her job responsibilities continued in 2004. The district court's grant of summary judgment on this issue is affirmed.

C.

Finally, Ms. McNulty argues that the district court erred in refusing to allow her to amend her complaint. We review this issue for abuse of discretion. *Las Vegas Ice & Cold Storage Co. v. Far W. Bank*, 893 F.2d 1182, 1185 (10th Cir. 1990). "A court properly may deny a motion for leave to amend as futile when the proposed amended complaint would be subject to dismissal for any reason, including that the amendment would not survive a motion for summary judgment." *Bauchman ex rel. Bauchman v. W. High Sch.*, 132 F.3d 542, 562 (10th Cir. 1997).

> Several factors are typically considered by the courts in determining whether to allow amendment of a complaint. These include whether the amendment will result in undue prejudice, whether the request was unduly and inexplicably delayed, was offered in good faith, or that the party had sufficient opportunity to state a claim and failed. Where the party seeking amendment knows or should have known of the facts upon which the proposed amendment is based but fails to include them in the original complaint, the motion to amend is subject to denial.

*Las Vegas Ice & Cold Storage Co.*, 893 F.2d at 1185 (quotation omitted).

On August 5, 2005, almost four months after she filed her first amended complaint and about six weeks after defendants filed their answer, Ms. McNulty sought to add new claims and new defendants. For her new claims, she alleged

that defendants violated the New Mexico Inspection of Public Records Act, N.M. Stat. §§ 14-2-1 to 14-2-12, by refusing to produce tapes of her administrative hearing and that defendants further retaliated against her, in violation of Title VII, by including in their answer their counterclaim for a preliminary injunction. Concerning the new defendants, she alleged that Mr. Arquero and Ms. Gerrard qualified as "employers" under Title VII and were liable for the alleged Title VII violations as well as violations under 42 U.S.C. § 1983. The district court held a hearing on the motion before denying it, stating:

> I'm going to deny the motion to amend at this time. It seems to me that this is too late in the proceeding to bring up matters that have been known all along, that even though they may or may not be stronger, based on subsequent depositions and interrogatories, it's a timing issue, that's very significant with the discovery deadline in the next week or two. And, frankly, I'm also not impressed with the claims that I'm hearing. They sound more like matters of evidence rather than claims against new parties. I don't believe 10th Circuit law allows individual defendants in a Title 7 claim, so that would be totally futile based on my understanding of 10th Circuit law, and other than having a punitive damage target, I've not heard any subsequent legal reason to bring in the individual defendants. I will deny the motion.

Aplt. App., Vol. III at 577.

The district court did not abuse its discretion in denying Ms. McNulty's motion to amend. Concerning the proposed new defendants, the district court correctly noted that it generally is improper to name persons in their individual capacity in a Title VII suit. *See Sauers v. Salt Lake County*, 1 F.3d 1122, 1125 (10th Cir. 1993) ("Under Title VII, suits against individuals must proceed in their

-11-

official capacity; individual capacity suits are inappropriate.").  And the record reveals no reason why the proposed § 1983 claims against Mr. Arquero and Ms. Gerrard could not have been included in the original or first amended complaints.

Regarding the proposed new Title VII claim against the existing defendants, amendment would have been futile.  Ms. McNulty sought to allege a discrete retaliatory act, but because she did not exhaust her administrative remedies for such claim, the district court would not have been able to entertain it.  *See Martinez v. Potter*, 347 F.3d 1208, 1211 (10th Cir. 2003) (noting that discrete acts that occur after the filing of the EEOC charge require separate exhaustion of administrative remedies).  Finally, concerning the proposed new state records law claim, even if the district court had allowed the amendment, it ultimately dismissed most of Ms. McNulty's state law claims – including another public records act claim – without prejudice, leaving her free to pursue those claims in state court.  Because the proposed claim would also have been dismissed, any error in not allowing the amendment would not justify reversal of the decision.

## III.

The judgment of the district court is AFFIRMED.

Entered for the Court

Wade Brorby
Circuit Judge